Andrea M. Miller [SBN: 88992]
NAGELEY, MEREDITH & MILLER, INC.
8001 Folsom Blvd., Suite 100
Sacramento, CA 95826
amiller@nmlsawfirm.com
Telephone: 916-386-8282
Facsimile: 916-386-8952

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMER T. MCCRARY,<br><br>          Plaintiff,<br><br>    v.<br><br>CARLOS M. GUTIERREZ, in his official capacity as Secretary of Commerce, the NATIONAL MARINE FISHERIES SERVICE, and RUSS M. STRACH, in his official capacity as Assistant Regional Administrator of the Protected Resource Division of the Southwest Region of the National Marine Fisheries Service,<br><br>          Defendants. | CV No. 08  1592  RMW  HRL<br><br>COMPLAINT<br><br>(Endangered Species Act Citizen Suit/Administrative Procedure Act) |

For his complaint, plaintiff alleges:

**Parties and Jurisdiction**

1.    HOMER T. MCCRARY is an individual residing in Davenport, California, who owns land and timber interests along the California coast south of San Francisco, and has suffered economic and other losses as a result of the listing, pursuant to 16 U.S.C. § 1533, of the so-called Central California Coast Evolutionarily Significant Unit (ESU) of coho salmon. He is an "interested person" within the meaning of 5 U.S.C. § 553(e).

2.    CARLOS M. GUTIERREZ, is the U.S. Secretary of Commerce, who has

Page 1

COMPLAINT

statutory authority over Endangered Species Act (ESA) decisions concerning the coho salmon; the NATIONAL MARINE FISHERIES SERVICE is a subunit of the U.S. Department of Commerce to which, upon information and belief, CARLOS M. GUTIERREZ has delegated his ESA authority with respect to coho salmon, and RUSS M. STRACH is the Assistant Regional Administrator of the Protected Resource Division of the Southwest Region of the National Marine Fisheries Service who has had primary responsibility for formulating the position of the NATIONAL MARINE FISHERIES SERVICE ("NMFS") with respect to the issues raised by this action.

3. This Court has jurisdiction under 16 U.S.C. § 1533(b)(3)(C)(ii) (negative findings on Endangered Species Act petitions), 28 U.S.C. §§ 1331 (federal question), 2201 (declaratory relief), and 2202 (injunctive relief), and 16 U.S.C. § 1540(g), which provides jurisdiction where, as here, plaintiff has given sixty days advance written notice of his intent to sue. A true copy of that notice (without enclosures), dated December 7, 2007, is attached as Exhibit 1 hereto. Venue is properly vested in this Court pursuant to a prior decision of this Court in *McCrary v. Gutierrez*, No. 06-CV-04174 (N.D. Cal. July 27, 2006).

**FIRST CLAIM FOR RELIEF: CITIZEN SUIT UNDER ENDANGERED SPECIES ACT**

4. Plaintiff re-alleges paragraphs 1-3 as if set forth herein.

5. This suit concerns the legal status of coho salmon, the species *Oncorhynchus kisutch*, which are widely distributed in commercially-harvestable quantities throughout their natural range from North Korea and Japan to the Soviet Far East, around the Bering Sea, and south along the North American Coast to California. More precisely, this suit concerns the lawfulness of listing as an "endangered species" a tiny, ephemeral, artificially-introduced, and hatchery-dependent subset of the overall coho salmon species presently found in rivers and streams south of San Francisco, California.

6. Plaintiff contends that the historical, natural range of coho salmon did not extend south of San Francisco, and that coho salmon presently found there are either strays or the remnants of extensive but failed efforts to introduce the coho in the area

Page 2

COMPLAINT

through salmon hatcheries, with some potential input by occasional stray coho. Plaintiff also contends even if the natural range of the species does include ephemeral colonies of coho south of San Francisco, such fish do not meet the criteria set forth in the Endangered Species Act ("ESA") for "endangered species", as amplified in policies of defendants, and that designating such fish as "endangered" promises to repeat the same failed experiments of the past in which vast sums were squandered in an attempt to introduce the fish in an area that is simply not suitable to support persistent, self-sustaining coho populations.

7. The ESA authorizes the listing, delisting, or reclassification of a species, subspecies or "distinct population segment" of a vertebrate species. 16 U.S.C. § 1533(4)(a).

8. Legislative history of the ESA indicates that Congress expected defendants to utilize their authority to list "distinct population segments" of species "sparingly". S. Rep. No. 96-151, at 7 (1979). However, in the case of Pacific salmon, defendants have listed nothing but "distinct population segments"; they have not listed any species or subspecies of Pacific salmon at all. Defendants have repeatedly abused the discretion conferred by Congress by declining to exercise their listing authority with respect to "distinct population segments" sparingly.

9. Defendants have determined that "distinct population segments" for Pacific salmon are represented by "evolutionarily significant units" (ESUs), a term invented by defendant NMFS. Defendants consider a group of Pacific salmon a "distinct population segment" (DPS), and hence a "species" subject to listing under the ESA, if the group represents an ESU of the species. Under NMFS' ESU policy, published at 52 Fed. Reg. 58,612 (Nov. 20, 1991), to constitute an ESU, a group of Pacific salmon must be "substantially reproductively isolated from other conspecific population units" and "must represent an important component in the evolutionary legacy of the species".

10. NMFS updated its ESU policy in 1996, in a more general statement issued

COMPLAINT

1  jointly with the U.S. Fish and Wildlife Service, but stated that the earlier policy constituted a "detailed extension of this [newer] joint policy" and indicated that it would continue to make decisions based on the earlier policy. 61 Fed. Reg. 4,722 (Feb. 7, 1996).

11. The stated purpose of these ESU policies is to distinguish between "distinct population segments" of fish that qualify for listing under the ESA and those which do not. The agency action challenged herein is contrary to these policies. In particular, the NMFS researcher whose scientific paper was the basis for NMFS' policy, Dr. Robin Waples, observed that "[a] key question is, how can evolutionarily important units be protected without running the risk of artificially maintaining units that might naturally undergo episodes of extinction/recolonization on something short of evolutionary time scales?" Defendants ignore entirely that key question and the associated risk, making their decision arbitrary and capricious, for the fish at issue in this suit are precisely the group described by Dr. Waples that have consistently suffered local extinction without continued hatchery support.

12. NMFS listed the "California Central Coast Coho salmon" as a threatened "species" in 1996, but stated that "the available information regarding the historic and present abundance of coho salmon throughout the Central California coast ESU is limited". 61 Fed. Reg. 56,139 (Oct. 31, 1996). NMFS also stated that the "rationale" for the geographic boundaries of the ESU was "summarized" in an earlier Federal Register notice. Id. at 56,145.

13. In that earlier Federal Register notice, NMFS declared that "[a]vailable information indicates that the San Lorenzo river currently is the southernmost population of coho salmon, and this is the geographic boundary for the proposed ESU". 60 Fed. Reg. 38,011, at 38,016 (July 25, 1995). No further rationale was provided.

14. On or about November 6, 2003, plaintiff transmitted to NMFS a petition to redefine the southern boundary of the California Central Coast Coho ESU.

15. Pursuant to 16 U.S.C. § 1533(b)(3)(A): "To the maximum extent practicable,

Page 4

COMPLAINT

within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 . . . to remove a species from[] either of the lists published under subsection (c) of this section, the Secretary shall make a finding as to whether the petitioner presents substantial scientific or commercial information indicating that the petitioned action *may be warranted*." (Emphasis added.)  "Substantial information is that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted". 50 C.F.R. § 424.14(b)(1).

16.  In 2005, NMFS revised its listing determination with respect to the Central California Coast Coho ESU to change the status from "threatened" to "endangered", 70 Fed. Reg. 37,160, at 37,192 (June 28, 2005).  In so doing, NMFS did not discuss or address the issues with respect to the southern boundary of the Central California Coast coho ESU that had been previously raised by plaintiff.

17.  Plaintiff sued defendants for failure to respond at all to the petition in *McCrary v. Gutierrez*, No. 06-CV-00086 (E.D. Cal. filed Jan. 12, 2006), and moved for summary judgment.  Thereafter, on March 23, 2006, NMFS published a Federal Register notice stating that "the petition does not present substantial scientific or commercial information indicating that the petitioned action may be warranted". 71 Fed. Reg. 14,683, 14,687 (Mar. 23, 2006).  NMFS also stated: "Furthermore, after reviewing the best available scientific and other information, NMFS finds the petitioned action is not warranted". *Id.* at 14,683.

18.  Plaintiff amended its complaint in Case No. 06-CV-0086 on March 31, 2006 to challenge the determination reflected in the Federal Register Notice, alleging that defendants' response to the petition was unlawful pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, and that, among other things, defendants' response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" pursuant to 5 U.S.C. § 706(2)(A).

19.  On June 23, 2006, the action was transferred to the Northern District and subsequently assigned Case No. 06-04174.  On December 6, 2007, the action was

dismissed without prejudice on the ground that defendants' rejection of the petition constituted an action "which is not discretionary to the Secretary" within the meaning of 16 U.S.C. § 1540(g)(1)(C) and therefore required sixty days notice to the Secretary in order for the Court to exercise subject matter jurisdiction. The present complaint presents the same claims as the initial complaint following the requisite notice.

20. NMFS' first objection to the petition was its declaration that the ESA "does not authorize the listing or delisting of a subset or portion of a listed species, subspecies, or DPS". 71 Fed. Reg. at 14,684. Inasmuch as defendants have discretion to define the boundaries of a DPS/ESU, defendants determine to warrant protection under the ESA, defendants necessarily have discretion to reconsider such boundaries. Defendants' contention that they lacked authority to consider the petition was contrary to law.

21. According to NMFS, "every population of coho salmon needs to be included in some coho salmon ESU". Id. at 14,687. Plaintiff agrees that this sentence accurately describes defendants' implementation of the ESA, but such implementation is necessarily arbitrary, capricious, and abuse of discretion and contrary to law as it is tantamount to a refusal to exercise the listing discretion conferred by Congress (and to be used "sparingly") in favor of a blanket rule requiring all coho populations to be listed for protection under the ESA.

22. Plaintiff presented substantial evidence that coho salmon were not native to the areas of California south of San Francisco Bay, identifying multiple lines of evidence to support this conclusion, all of which were not available to, or not referenced by, defendants at the time of the initial listing of the Central California Coast coho salmon.

23. Plaintiff provided evidence that leading salmon scientists writing before the introduction of hatchery coho to the area in 1906 referred to the range of coho salmon as extending only as far south as San Francisco. NMFS responded that "a general ichthyofaunal reference . . . does not mean that the species was absent in areas beyond the referenced landmark". Id. at 14,684. In fact, the leading ichthyologist of the era (and

COMPLAINT

President of Stanford University), Dr. David Starr Jordan, stated that: "Only the quinnat [Chinook] and the dog-salmon [chum] have been noticed south of San Francisco".

24. Plaintiff also provided early 1900s newspaper accounts referring, among other things, to the introduction of a "new species" in the Santa Cruz Mountains through the 1906 hatchery efforts to introduce coho. NMFS dismissed such accounts as "non-scientific reports of already depressed salmon populations rather than as definitive scientific proof that these fish were *unquestionably absent* from the area". *Id.* (emphasis added). NMFS had no evidence concerning the abundance of coho salmon prior to 1906 from which it could draw any conclusion as to whether populations were "depressed".

25. Plaintiff also provided evidence that coho salmon bones were utterly absent among 1,238 fish bones found in Native American middens in Santa Cruz and coastal San Mateo counties. NMFS responded that "much more extensive sampling would be needed to use archaeological excavation findings as *definitive evidence* for establishing the presence or absence of coho salmon in the area". *Id.* at 14,686 (emphasis added).

26. Plaintiff also provided evidence that the local physical conditions in the Santa Cruz Mountains were inconsistent with maintaining populations of coho salmon, principally because the rivers are "flashier", tending to be subject to extreme hydrological variations that destroy coho salmon redds (nests), and, indeed, the local rivers and streams are often entirely blocked by sand bars. NMFS responded that its theoretical analysis of habitat potential for salmon suggested that "coastal streams south of San Francisco exhibit conditions favorable to coho salmon", *id.*, but the analysis was arbitrary and capricious because, among other things, the model did not account at all for the factors stressed by plaintiff. In particular, NMFS' computer model ignores entirely random variations (floods and drought) that have historically exterminated local coho populations.

27. NMFS also responded that it was "unaware of any *conclusive* scientific evidence, and the petition does not offer any, that would lead one to conclude that these habitat differences are significant enough to preclude coho salmon presence south of San

COMPLAINT

Francisco". *Id.* (emphasis added). NMFS' approach to review of the data was contrary to law in that the question presented by the petition was not whether there were insuperable barriers to the presence of coho south of San Francisco, but whether those fish might lawfully be listed under the ESA.

28. Defendants' rejection of the pre-1906, archeological, and local habitat data was also arbitrary, capricious, and contrary to law because the statute and regulations do not require "conclusive" or "definitive" information to determine that the petitioned action "*may be* warranted". 16 U.S.C. § 1533(b)(3)(A). Defendants' decision making process substitutes a weighing of the scientific and commercial data and application of the statute, regulations, and policies with the simple but unlawful rule that any scintilla of evidence that fish were present in any area in California at any time requires listing such fish for protection as a protected "species".

29. Defendants placed great reliance upon a few salmon specimens collected in 1895 from rivers south of San Francisco, which were identified at the time as chinook and chum salmon, not coho salmon. The specimens were initially held at Stanford University, in a collection that was severely damaged in the 1906 earthquake. More than 1,000 jars and bottles containing specimens broke, and casting doubt upon the provenance of the specimens. NMFS responded to the earthquake issue by stating that "it is improbable that all 1,895 specimens had their original containers broken, ended up on the floor, were misidentified from their original labels, and had their 'earthquake' labels removed". 71 Fed. Reg. at 14,685. This response was arbitrary and capricious insofar as plaintiff might reasonably question the reliability of the four jars at issue (two of which are undated) whether or not each and every jar broke.

30. With respect to the fact that the specimens had initially been identified as chinook and chum salmon, NMFS reported that the specimens had been "re-identified as coho salmon while still in the possession of Stanford University", had then been re-identified as chum salmon by the California Academy of Sciences, to whom the collection

Page 8

COMPLAINT

had been transferred, because the Academy "initially used the original Stanford University ledgers as the source of species identifications", and that certain "database entries were corrected in 1999". *Id.* at 14,685. NMFS did not identify any of the persons involved in these activities, and made its determinations based upon information informally provided by the Senior Collections Manager for the California Academy of Sciences, who as far as plaintiff can tell had no personal knowledge of any of the facts. Defendants' position that "we do not question the authenticity of these specimens", *id.* at 14,686, amounts to an arbitrary refusal to weigh the evidence in the unusual circumstances presented.

31.  Plaintiff also pointed out that even if the handful of specimens collected in 1895 were coho salmon, given all the other evidence summarized above, such specimens ought to be regarded as the progeny of spawning by stray coho that never established a native population of fish. NMFS responded by claiming that "it would be natural for coho salmon populations at the southern end of the species range to be founded and continually reinforced by straying migrants from elsewhere in the species range." 71 Fed. Reg. at 14,685. This determination was arbitrary and capricious because it would also be natural for coho salmon to stray beyond the species' range without founding continuous populations, and because there is no evidence whatsoever to suggest that the asserted reinforcing effects of straying could possibly outweigh the naturally occurring floods and droughts that intermittently exterminate any ephemeral colonies of coho in the area. In substance, NMFS refused to address the issue raised by plaintiff, which was whether the specimens—if originally coho at all—constituted a continuous native population or were simply a transient phenomenon. NMFS also arbitrarily discounted plaintiff's showing that the 1895 year class of salmon was very large because of favorable ocean conditions, increasing the probability of transient strays south of San Francisco.

32.  Plaintiff presented evidence, undisputed by defendants, that over 400,000 coho eggs were transferred to the Brookdale hatchery from Baker Lake, Washington, and that the Baker Lake coho were planted in various locations in Santa Cruz County

Page 9

COMPLAINT

1  commencing in 1906. Although local coho populations after 1906 in some cases persisted
2  for decades pending the next flood or drought, the failure of these fish to thrive over the
3  long term led to continued, and unsuccessful, efforts to establish significant coho runs in
4  the area utilizing hatcheries. Plaintiff contends that this history of failure corroborates the
5  evidence above, and that any current populations should be regarded as persisting only
6  through active hatchery supplementation in light of the unsuitable habitat.

7      33.    NMFS offered several responses to this contention, but has refused entirely
8  to consider whether, as a matter of federal policy, it is lawful to commit the resources of the
9  Federal government, and regulated state, local and private entities, to efforts to recover
10 fish that for all practical purposes have never persisted and cannot persist. Instead, NMFS
11 responded that the number of Baker Lake eggs was "small", that the fish were "almost
12 certainly planted as fry", and that it was thus "likely that few if any of these planted fish
13 survived to reproduce as adults, much less establish a new population in the area". *Id.* at
14 14,686. NMFS' reliance upon such speculation to dismiss the contentions of the petition
15 was arbitrary, capricious and contrary to law.

16     34.    NMFS also placed great reliance upon what it called "recent genetic
17 evidence" which it claimed "indicate coho salmon south of San Francisco Bay represent a
18 historic part of the CCC coho ESU and are not the result of anthropogenic introductions".
19 *Id.* (citations omitted). This conclusion was arbitrary and capricious because the genetic
20 information merely describes the present genetic relationships amongst runs of coho
21 salmon on the California coast. At the meeting held between plaintiff and NMFS on
22 November 20, 2005 (*see id.* at 14,684), NMFS' geneticist properly disavowed any intent to
23 utilize the genetic data to draw conclusions as to the origin of the present populations or
24 their history. All that the genetics data show is a relationship between genetic distance
25 and geographic distance, with salmon in nearby rivers are more closely related than
26 salmon in rivers further apart. NMFS' misuse of the current genetics data to attempt to
27 draw conclusions about what happened 100 years ago is arbitrary and capricious.

28

Page 10

COMPLAINT

35. The geneticist also disavowed the statement in the Federal Register notice that "alleles in coho salmon from San Mateo and Santa Cruz counties do not appear to be present in any other population within the ESU", *id.* at 14,686, which he characterized as a preliminary hypothesis later rejected by the review of additional population data. NMFS' continued reliance upon an erroneous hypothesis is arbitrary and capricious.

36. Plaintiff also stated that the populations south of San Francisco, even if they were "native", did not meet the requirements for listing insofar as they had no unique characteristics compared to coho salmon generally, and did not meet the requirements of the ESU policy. The best available evidence suggests that these populations are "sink" populations (as opposed to "source" populations), which absorb strays from more abundant populations to the north without contributing in any way to the evolutionary legacy of the species.

37. NMFS responded that "it is uncertain whether or not all populations in this area are dependent (sink) or independent (source) populations", *id.* at 14,687, conceding that the populations south of San Francisco had no unique characteristics. Ultimately, however, NMFS concluded that the populations should be listed because they "contribute to the ESU as a whole", a finding that is arbitrary and capricious because whenever an ESU is deemed to consist of a group of populations, each population "contribute[s] to the ESU as a whole", making NMFS' statement a truism that cannot lawfully support a listing decision.

38. NMFS also asserted that "protection and restoration of the coho salmon populations south of San Francisco Bay are essential to the conservation of the ESU as a whole because this geographic area is at the southernmost edge of the species distribution in North America and is likely to be a source of evolutionary innovation for the species". *Id.* at 14,687. This conclusion is arbitrary, capricious and contrary to law because, among other things, NMFS cannot "restore" that which never existed, and NMFS' suggestion that the populations are "likely to be source of evolutionary innovation" is inconsistent with its

Page 11

COMPLAINT

agnostic position as to whether the populations are a sink or a source.

39. Ultimately, NMFS' conclusions are arbitrary, capricious and contrary to law because the fundamental design of the ESA is to determine whether a "species" is at risk "throughout all or a significant portion of its range". 16 U.S.C. §§ 1531(6), (20) (definitions of "endangered" and "threatened"). Defendants' insistence upon maintaining a listing for a handful of populations at the southernmost edge of the natural range of the species (in NMFS' view) or beyond it (the conclusion supported by the best available scientific and commercial data) is arbitrary, capricious, and contrary to law. As a matter of elementary biology, populations at the edge of a species' natural range will become extinct from natural variations in productivity, particularly in areas of poor habitat, and Congress never intended defendants to utilize their listing authority to protect such fish where the overall species is healthy, viable, and subject to significant and continuing commercial harvest (albeit not in California), and the tiny subset of fish at issue exhibit no unique characteristics making them worthy of listing.

40. To the extent NMFS purports in its Federal Register Notice to not merely issue the statutory ninety-day finding that the petitioned action did not present sufficient evidence that the petitioned action "may be warranted", 16 U.S.C. § 1533(b)(3)(A), but also to make the ultimate decision that the petitioned action is not warranted pursuant to 16 U.S.C. § 1533(b)(3)(B), defendants' conduct is contrary to law for want of "observance of procedure required by law" within the meaning of 5 U.S.C. § 706(2)(D). Plaintiff was entitled to have his petition found to present substantial evidence indicating that the petitioned action may be warranted, and for such determination to be published in the Federal Register, to provide for public notice of such finding to assist defendants and plaintiff in gathering further evidence prior to a second determination on the ultimate merits of the petition.

41. In the alternative, defendants' ultimate determination on the plaintiff was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"

COMPLAINT

within the meaning of 5 U.S.C. § 706(2)(A) for the reasons alleged above.

42. Plaintiff has no adequate remedy at law, and will suffer continuing and irreparable injury unless and until defendants are compelled to make lawful decisions concerning his petition.

**SECOND CLAIM FOR RELIEF: ADMINISTRATIVE PROCEDURE ACT**

43. Plaintiff re-alleges paragraphs 1-42 as if set forth herein.

44. To the extent that a future court may determine that defendants' response to the petition was not agency action "which is not discretionary with the Secretary" within the meaning of 16 U.S.C. § 1540(g)(1)(C), such that subject matter jurisdiction lies under 16 U.S.C. § 1533(b)(3)(C)(ii) and the Administrative Procedure Act, plaintiff alleges that defendants' rejection of the petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A) for the reasons alleged above.

WHEREFORE, plaintiff prays for judgment declaring defendants' rejection of the petition to have been unlawful, and remanding the petition to defendants for further consideration in accordance with law, for an award of his attorney fees and costs pursuant to 16 U.S.C. section 1504(g)(4) and/or 28 U.S.C. section 2412, and for such other and further relief as the Court may deem just and proper.

Dated: March __, 2008.

NAGELEY, MEREDITH & MILLER, INC.

By _____
Andrea M. Miller
*Attorney for Plaintiff*

Proposed Counsel *Pro Hac Vice*:

James L. Buchal
MURPHY & BUCHAL LLP
2000 S.W. First Avenue, Suite 320
Portland, OR 97201
Tel: 503-227-1011
Fax: 503-227-1034
E-mail: jbuchal@mbllp.com
OSB #92161

Page 13

COMPLAINT