James L. Buchal, OSB: 92161
MURPHY & BUCHAL LLP
2000 S.W. First Avenue, Suite 420
Portland, OR 97201
jbuchal@mbllp.com
Telephone: 503-227-1011
Facsimile: 503-227-1034

Attorney *Pro Hac Vice* for Plaintiff

Andrea M. Miller, SBN: 88992
NAGELEY, MEREDITH & MILLER, INC.
8001 Folsom Blvd., Suite 100
Sacramento, CA 95826
amiller@nmlsawfirm.com
Telephone: 916-386-8282
Facsimile: 916-386-8952

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HOMER T. MCCRARY,<br><br>        Plaintiff,<br>v.<br><br>CARLOS M. GUTIERREZ, *et al*.,<br><br>        Defendants. | Case No. CV 08-01592-RMW<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO PROCEED ON EXISTING ADMINISTRATIVE RECORD AND BRIEFS<br><br>Date:    August 22, 2008<br>Time:   9:00 a.m.<br>Judge:  Hon. Ronald M. Whyte<br>Courtroom 6, 4th Floor |

**Argument**

Much of defendants' opposition to this motion is pure *ad hominem* attacks. Plaintiff is not here merely to assert "economic interests"; he has been honored for his work in protecting native, listed steelhead that are jeopardized by defendants' arbitrary and unreasonable insistence on running coho hatcheries in an area the coho have never thrived and never will. It is not plaintiff that has engaged in missteps and noncompliance with the ESA. Defendants stonewalled his petition for

1  years. Plaintiff then sued in a District where the specific federal official responsible for denial of
2  petition, and with whom he had met concerning the petition, was found, and the Justice Department
3  sought a change of venue. The Justice Department then sand-bagged plaintiff with a novel and
4  unprecedented jurisdictional defense that could have been raised and quickly resolved by motion to
5  dismiss; this Court ultimately accepted the defense, but only after full briefing on the merits.

6  And now that plaintiff wants to get to the merits again, defendants are once again
7  obfuscating the issues. Of course this is a "new lawsuit". But it is a "new lawsuit" challenging
8  precisely the same decision. Attached as Exhibit 1 is a printout identifying the changes (after the
9  initial paragraphs reciting the same parties and improved jurisdiction) between the last complaint
10 and the present complaint.

11 Those changes are minimal. Additional sentences were added to describe the procedural
12 history, and a "placeholder" second claim was issued to present the identical claim under the APA
13 in addition to the ESA. Plaintiff fears that had he not done so, the Justice Department would then
14 contend, notwithstanding its position last time around, that there was no jurisdiction under the ESA
15 citizen suit provision, as rejection of the petition *was* a discretionary decision. It is, after all, a "new
16 lawsuit", and the Justice Department would not be bound by "law of the case".

17 But the Justice Department *is* bound to the fundamental principle that review of the very
18 same agency decision requires review of the very same administrative record, which it has already
19 prepared and filed in this Court. By all appearances, the Justice Department is concerned that it
20 cannot prevail with that record, which it previously certified as complete and accurate. The very
21 notion that the Department wishes "to ensure that it has compiled the administrative record that is
22 *appropriate for this case*" (Opposition at 5; emphasis added) ought to give the Court serious
23 concern as to whether it can have any confidence in agency decisionmaking when the agency claims
24 it may vary the administrative record based on considerations of "appropriateness".

25 In fact, in negotiations prior to presenting this motion, defendants took the position that they
26 could change the administrative record, which makes the schedule they have presented at best
27 misleading. To the extent that they carry out their threat to change the administrative record, the
28 entire schedule would have to slip by weeks if not months, as plaintiff believes it is probably most

appropriate to confine defendants to the lawful scope of the record—though plaintiff remains interested in adding the materials defendants refused to provide last time around.

In any event, the simple facts are these: the administrative record has been prepared for years, the answer can be prepared in an hour or two, and the merits briefs have already been presented and filed. There is nothing new in this complaint that requires any different argument. All of the previously-filed materials can either be moved from one court file to the other or re-filed by the parties.

There is no reason that additional case law and "refinements", such as they may be, could not be presented in next month or so before counsel's wedding in a single brief filed by defendants. Plaintiff can answer it within a week. That is the obvious way to promote the "just, speedy and inexpensive determination" of this dispute. Fed. R. Civ. P. 1.

**Conclusion**

For the foregoing reasons, and the reasons stated in our opening memorandum, the Court should either (1) direct the Clerk to transfer the above-cited materials into the record of this case or (2) direct the parties to refile such documents, so as to facilitate its speedy and economical resolution on the merits.

Dated: August 7, 2008.

Respectfully submitted,

*/s/ James L. Buchal*
James L. Buchal OSB #92161

Attorney for Plaintiff, *Pro Hac Vice*

# CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2008, I electronically filed the foregoing "Plaintiff's Reply in Support of Motion to Proceed on Existing Administrative Record and Briefs" with the Clerk of Court using the CM/ECF system which will automatically send email notification to the following attorney of record:

>Robert P. Williams, Trial Attorney
>U.S. Department of Justice
>Environment & Natural Resources Division
>Wildlife & Marine Resources Section
>tel: (202) 305-0206
>fax: (202) 305-0275
>robert.p.williams@usdoj.gov

Dated: August 7, 2008

By: */s/ Carole A. Caldwell*
Carole A. Caldwell

# EXHIBIT 1

1.      This suit concerns the legal status of coho salmon, the species *Oncorhynchus kisutch*, which are widely distributed in commercially-harvestable quantities throughout their natural range from North Korea and Japan to the Soviet Far East, around the Bering Sea, and south along the North American Coast to California. More precisely, this suit concerns the lawfulness of listing as an "endangered species" a tiny, ephemeral, artificially-introduced, and hatchery-dependent subset of the overall coho salmon species presently found in rivers and streams south of San Francisco, California.

2.      Plaintiff contends that the historical, natural range of coho salmon did not extend south of San Francisco, and that coho salmon presently found there are either strays or the remnants of extensive but failed efforts to introduce the coho in the area through salmon hatcheries, with some potential input by occasional stray coho. Plaintiff also contends even if the natural range of the species does include ephemeral colonies of coho south of San Francisco, such fish do not meet the criteria set forth in the Endangered Species Act ("ESA") for "endangered species", as amplified in policies of defendants, and that designating such fish as "endangered" promises to repeat the same failed experiments of the past in which vast sums were squandered in an attempt to introduce the fish in an area that is simply not suitable to support persistent, self-sustaining coho populations.

3.      The ESA authorizes the listing, delisting, or reclassification of a species, subspecies or "distinct population segment" of a vertebrate species. 16 U.S.C. § 1533(4)(a).

4.      Legislative history of the ESA indicates that Congress expected defendants to utilize their authority to list "distinct population segments" of species "sparingly". S. Rep. No. 96-151, at 7 (1979). However, in the case of Pacific salmon, defendants have listed nothing but "distinct population segments"; they have not listed any species or subspecies of Pacific salmon at all. Defendants have repeatedly abused

the discretion conferred by Congress by declining to exercise their listing authority with respect to "distinct population segments" sparingly.

5.  Defendants have determined that "distinct population segments" for Pacific salmon are represented by "evolutionarily significant units" (ESUs), a term invented by defendant NMFS. Defendants consider a group of Pacific salmon a "distinct population segment" (DPS), and hence a "species" subject to listing under the ESA, if the group represents an ESU of the species. Under NMFS' ESU policy, published at 52 Fed. Reg. 58,612 (Nov. 20, 1991), to constitute an ESU, a group of Pacific salmon must be "substantially reproductively isolated from other conspecific population units" and "must represent an important component in the evolutionary legacy of the species".

6.  NMFS updated its ESU policy in 1996, in a more general statement issued jointly with the U.S. Fish and Wildlife Service, but stated that the earlier policy constituted a "detailed extension of this [newer] joint policy" and indicated that it would continue to make decisions based on the earlier policy. 61 Fed. Reg. 4,722 (Feb. 7, 1996).

7.  The stated purpose of these ESU policies is to distinguish between "distinct population segments" of fish that qualify for listing under the ESA and those which do not. The agency action challenged herein is contrary to these policies. In particular, the NMFS researcher whose scientific paper was the basis for NMFS' policy, Dr. Robin Waples, observed that "[a] key question is, how can evolutionarily important units be protected without running the risk of artificially maintaining units that might naturally undergo episodes of extinction/recolonization on something short of evolutionary time scales?" Defendants ignore entirely that key question and the associated risk, making their decision arbitrary and capricious, for the fish at issue in this suit are precisely the group described by Dr. Waples that have consistently suffered local extinction without continued hatchery support.

8.  NMFS listed the "California Central Coast Coho salmon" as a threatened

"species" in 1996, but stated that "the available information regarding the historic and present abundance of coho salmon throughout the Central California coast ESU is limited".  61 Fed. Reg. 56,139 (Oct. 31, 1996).  NMFS also stated that the "rationale" for the geographic boundaries of the ESU was "summarized" in an earlier Federal Register notice.  *Id.* at 56,145.

9.  In that earlier Federal Register notice, NMFS declared that "[a]vailable information indicates that the San Lorenzo river currently is the southernmost population of coho salmon, and this is the geographic boundary for the proposed ESU".  60 Fed. Reg. 38,011, at 38,016 (July 25, 1995).  No further rationale was provided.

10.  On or about November 6, 2003, plaintiff transmitted to NMFS a petition to redefine the southern boundary of the California Central Coast Coho ESU.

11.  Pursuant to 16 U.S.C. § 1533(b)(3)(A):  "To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 . . . to remove a species from[] either of the lists published under subsection (c) of this section, the Secretary shall make a finding as to whether the petitioner presents substantial scientific or commercial information indicating that the petitioned action *may be warranted."*  (Emphasis added.)  "Substantial information is that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted".  50 C.F.R. § 424.14(b)(1).

12.  In 2005, NMFS revised its listing determination with respect to the Central California Coast Coho ESU to change the status from "threatened" to "endangered", 70 Fed. Reg. 37,160, at 37,192 (June 28, 2005).  In so doing, NMFS did not discuss or address the issues with respect to the southern boundary of the Central California Coast coho ESU that had been previously raised by plaintiff.

13.  Plaintiff sued defendants for failure to respond at all to the petition in *McCrary v. Gutierrez*, No. 06-CV-00086 (E.D. Cal. filed Jan. 12, 2006), and moved for summary judgment.  Thereafter, on March 23, 2006, NMFS published a Federal Register

notice stating that "the petition does not present substantial scientific or commercial information indicating that the petitioned action may be warranted". 71 Fed. Reg. 14,683, 14,687 (Mar. 23, 2006). NMFS also stated: "Furthermore, after reviewing the best available scientific and other information, NMFS finds the petitioned action is not warranted". *Id.* at 14,683.

14. Plaintiff amended its complaint in Case No. 06-CV-0086 on March 31, 2006 to challenge the determination reflected in the Federal Register Notice, alleging that defendants' response to the petition was unlawful pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, and that, among other things, defendants' response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" pursuant to 5 U.S.C. § 706(2)(A).

15. On June 23, 2006, the action was transferred to the Northern District and subsequently assigned Case No. 06-04174. On December 6, 2007, the action was dismissed without prejudice on the ground that defendants' rejection of the petition constituted an action "which is not discretionary to the Secretary" within the meaning of 16 U.S.C. § 1540(g)(1)(C) and therefore required sixty days notice to the Secretary in order for the Court to exercise subject matter jurisdiction. The present complaint presents the same claims as the initial complaint following the requisite notice.

16. NMFS' first objection to the petition was its declaration that the ESA "does not authorize the listing or delisting of a subset or portion of a listed species, subspecies, or DPS". 71 Fed. Reg. at 14,684. Inasmuch as defendants have discretion to define the boundaries of a DPS/ESU, defendants determine to warrant protection under the ESA, defendants necessarily have discretion to reconsider such boundaries. Defendants' contention that they lacked authority to consider the petition was contrary to law.

17. According to NMFS, "every population of coho salmon needs to be included in some coho salmon ESU". *Id.* at 14,687. Plaintiff agrees that this sentence

accurately describes defendants' implementation of the ESA, but such implementation is necessarily arbitrary, capricious, and abuse of discretion and contrary to law as it is tantamount to a refusal to exercise the listing discretion conferred by Congress (and to be used "sparingly") in favor of a blanket rule requiring all coho populations to be listed for protection under the ESA.

18. Plaintiff presented substantial evidence that coho salmon were not native to the areas of California south of San Francisco Bay, identifying multiple lines of evidence to support this conclusion, all of which were not available to, or not referenced by, defendants at the time of the initial listing of the Central California Coast coho salmon.

19. Plaintiff provided evidence that leading salmon scientists writing before the introduction of hatchery coho to the area in 1906 referred to the range of coho salmon as extending only as far south as San Francisco. NMFS responded that "a general ichthyofaunal reference . . . does not mean that the species was absent in areas beyond the referenced landmark". *Id.* at 14,684. In fact, the leading ichthyologist of the era (and President of Stanford University), Dr. David Starr Jordan, stated that: "Only the quinnat [Chinook] and the dog-salmon [chum] have been noticed south of San Francisco".

20. Plaintiff also provided early 1900s newspaper accounts referring, among other things, to the introduction of a "new species" in the Santa Cruz Mountains through the 1906 hatchery efforts to introduce coho. NMFS dismissed such accounts as "non-scientific reports of already depressed salmon populations rather than as definitive scientific proof that these fish were *unquestionably absent* from the area". *Id.* (emphasis added). NMFS had no evidence concerning the abundance of coho salmon prior to 1906 from which it could draw any conclusion as to whether populations were "depressed".

21. Plaintiff also provided evidence that coho salmon bones were utterly absent among 1,238 fish bones found in Native American middens in Santa Cruz and coastal San Mateo counties. NMFS responded that "much more extensive sampling

would be needed to use archaeological excavation findings as *definitive evidence* for establishing the presence or absence of coho salmon in the area". *Id.* at 14,686 (emphasis added).

22. Plaintiff also provided evidence that the local physical conditions in the Santa Cruz Mountains were inconsistent with maintaining populations of coho salmon, principally because the rivers are "flashier", tending to be subject to extreme hydrological variations that destroy coho salmon redds (nests), and, indeed, the local rivers and streams are often entirely blocked by sand bars. NMFS responded that its theoretical analysis of habitat potential for salmon suggested that "coastal streams south of San Francisco exhibit conditions favorable to coho salmon", *id.*, but the analysis was arbitrary and capricious because, among other things, the model did not account at all for the factors stressed by plaintiff. In particular, NMFS' computer model ignores entirely random variations (floods and drought) that have historically exterminated local coho populations.

23. NMFS also responded that it was "unaware of any *conclusive* scientific evidence, and the petition does not offer any, that would lead one to conclude that these habitat differences are significant enough to preclude coho salmon presence south of San Francisco". *Id.* (emphasis added). NMFS' approach to review of the data was contrary to law in that the question presented by the petition was not whether there were insuperable barriers to the presence of coho south of San Francisco, but whether those fish might lawfully be listed under the ESA.

24. Defendants' rejection of the pre-1906, archeological, and local habitat data was also arbitrary, capricious, and contrary to law because the statute and regulations do not require "conclusive" or "definitive" information to determine that the petitioned action "*may be* warranted". 16 U.S.C. § 1533(b)(3)(A). Defendants' decisionmaking process substitutes a weighing of the scientific and commercial data and application of the statute, regulations, and policies with the simple but unlawful rule that any scintilla of

evidence that fish were present in any area in California at any time requires listing such fish for protection as a protected "species".

25. Defendants placed great reliance upon a few salmon specimens collected in 1895 from rivers south of San Francisco, which were identified at the time as chinook and chum salmon, not coho salmon. The specimens were initially held at Stanford University, in a collection that was severely damaged in the 1906 earthquake. More than 1,000 jars and bottles containing specimens broke, and casting doubt upon the provenance of the specimens. NMFS responded to the earthquake issue by stating that "it is improbable that all 1,895 specimens had their original containers broken, ended up on the floor, were misidentified from their original labels, and had their 'earthquake' labels removed". 71 Fed. Reg. at 14,685. This response was arbitrary and capricious insofar as plaintiff might reasonably question the reliability of the four jars at issue (two of which are undated) whether or not each and every jar broke.

26. With respect to the fact that the specimens had initially been identified as chinook and chum salmon, NMFS reported that the specimens had been "re-identified as coho salmon while still in the possession of Stanford University", had then been re-identified as chum salmon by the California Academy of Sciences, to whom the collection had been transferred, because the Academy "initially used the original Stanford University ledgers as the source of species identifications", and that certain "database entries were corrected in 1999". *Id.* at 14,685. NMFS did not identify any of the persons involved in these activities, and made its determinations based upon information informally provided by the Senior Collections Manager for the California Academy of Sciences, who as far as plaintiff can tell had no personal knowledge of any of the facts. Defendants' position that "we do not question the authenticity of these specimens", *id.* at 14,686, amounts to an arbitrary refusal to weigh the evidence in the unusual circumstances presented.

27. Plaintiff also pointed out that even if the handful of specimens collected in

*Deleted: petitioner*

*Deleted: petitioner*

*Deleted: Petitioner*

1895 were coho salmon, given all the other evidence summarized above, such specimens ought to be regarded as the progeny of spawning by stray coho that never established a native population of fish. NMFS responded by claiming that "it would be natural for coho salmon populations at the southern end of the species range to be founded and continually reinforced by straying migrants from elsewhere in the species range." 71 Fed. Reg. at 14,685. This determination was arbitrary and capricious because it would also be natural for coho salmon to stray beyond the species' range without founding continuous populations, and because there is no evidence whatsoever to suggest that the asserted reinforcing effects of straying could possibly outweigh the naturally occurring floods and droughts that intermittently exterminate any ephemeral colonies of coho in the area. In substance, NMFS refused to address the issue raised by plaintiff, which was whether the specimens—if originally coho at all—constituted a continuous native population or were simply a transient phenomenon. NMFS also arbitrarily discounted plaintiff's showing that the 1895 year class of salmon was very large because of favorable ocean conditions, increasing the probability of transient strays south of San Francisco.

28. Plaintiff presented evidence, undisputed by defendants, that over 400,000 coho eggs were transferred to the Brookdale hatchery from Baker Lake, Washington, and that the Baker Lake coho were planted in various locations in Santa Cruz County commencing in 1906. Although local coho populations after 1906 in some cases persisted for decades pending the next flood or drought, the failure of these fish to thrive over the long term led to continued, and unsuccessful, efforts to establish significant coho runs in the area utilizing hatcheries. Plaintiff contends that this history of failure corroborates the evidence above, and that any current populations should be regarded as persisting only through active hatchery supplementation in light of the unsuitable habitat.

29. NMFS offered several responses to this contention, but has refused entirely to consider whether, as a matter of federal policy, it is lawful to commit the

*Deleted: petitioners*
*Deleted: petitioner's*
*Deleted: Petitioner*
*Deleted: Petitioner contend*

resources of the Federal government, and regulated state, local and private entities, to efforts to recover fish that for all practical purposes have never persisted and cannot persist. Instead, NMFS responded that the number of Baker Lake eggs was "small", that the fish were "almost certainly planted as fry", and that it was thus "likely that few if any of these planted fish survived to reproduce as adults, much less establish a new population in the area". *Id.* at 14,686. NMFS' reliance upon such speculation to dismiss the contentions of the petition was arbitrary, capricious and contrary to law.

30. NMFS also placed great reliance upon what it called "recent genetic evidence" which it claimed "indicate coho salmon south of San Francisco Bay represent a historic part of the CCC coho ESU and are not the result of anthropogenic introductions". *Id.* (citations omitted). This conclusion was arbitrary and capricious because the genetic information merely describes the present genetic relationships amongst runs of coho salmon on the California coast. At the meeting held between plaintiff and NMFS on November 20, 2005 (*see id.* at 14,684), NMFS' geneticist properly disavowed any intent to utilize the genetic data to draw conclusions as to the origin of the present populations or their history. All that the genetics data show is a relationship between genetic distance and geographic distance, with salmon in nearby rivers are more closely related than salmon in rivers further apart. NMFS' misuse of the current genetics data to attempt to draw conclusions about what happened 100 years ago is arbitrary and capricious.

31. The geneticist also disavowed the statement in the Federal Register notice that "alleles in coho salmon from San Mateo and Santa Cruz counties do not appear to be present in any other population within the ESU", *id.* at 14,686, which he characterized as a preliminary hypothesis later rejected by the review of additional population data. NMFS' continued reliance upon an erroneous hypothesis is arbitrary and capricious.

32. Plaintiff also stated that the populations south of San Francisco, even if they were "native", did not meet the requirements for listing insofar as they had no unique characteristics compared to coho salmon generally, and did not meet the

**Deleted:** petitioner

**Deleted:** Petitioner

requirements of the ESU policy. The best available evidence suggests that these populations are "sink" populations (as opposed to "source" populations), which absorb strays from more abundant populations to the north without contributing in any way to the evolutionary legacy of the species.

33.     NMFS responded that "it is uncertain whether or not all populations in this area are dependent (sink) or independent (source) populations", *id.* at 14,687, conceding that the populations south of San Francisco had no unique characteristics. Ultimately, however, NMFS concluded that the populations should be listed because they "contribute to the ESU as a whole", a finding that is arbitrary and capricious because whenever an ESU is deemed to consist of a group of populations, each population "contribute[s] to the ESU as a whole", making NMFS' statement a truism that cannot lawfully support a listing decision.

34.     NMFS also asserted that "protection and restoration of the coho salmon populations south of San Francisco Bay are essential to the conservation of the ESU as a whole because this geographic area is at the southernmost edge of the species distribution in North America and is likely to be a source of evolutionary innovation for the species". *Id.* at 14,687. This conclusion is arbitrary, capricious and contrary to law because, among other things, NMFS cannot "restore" that which never existed, and NMFS' suggestion that the populations are "likely to be source of evolutionary innovation" is inconsistent with its agnostic position as to whether the populations are a sink or a source.

35.     Ultimately, NMFS' conclusions are arbitrary, capricious and contrary to law because the fundamental design of the ESA is to determine whether a "species" is at risk "throughout all or a significant portion of its range". 16 U.S.C. §§ 1531(6), (20) (definitions of "endangered" and "threatened"). Defendants' insistence upon maintaining a listing for a handful of populations at the southernmost edge of the natural range of the species (in NMFS' view) or beyond it (the conclusion supported by the best available scientific and commercial data) is arbitrary, capricious, and contrary to law. As a matter

Deleted: NMFS has no basis for concluding
Deleted: present
Deleted: at the southernmost edge
Deleted: species' distribution are any lower than the virtually non-existent historical levels.
Deleted: thoughout

of elementary biology, populations at the edge of a species' natural range will become extinct from natural variations in productivity, particularly in areas of poor habitat, and Congress never intended defendants to utilize their listing authority to protect such fish where the overall species is healthy, viable, and subject to significant and continuing commercial harvest (albeit not in California), and the tiny subset of fish at issue exhibit no unique characteristics making them worthy of listing.

> **Deleted:** protection

36.     To the extent NMFS purports in its Federal Register Notice to not merely issue the statutory ninety-day finding that the petitioned action did not present sufficient evidence that the petitioned action "may be warranted", 16 U.S.C. § 1533(b)(3)(A), but also to make the ultimate decision that the petitioned action is not warranted pursuant to 16 U.S.C. § 1533(b)(3)(B), defendants conduct is contrary to law for want of "observance of procedure required by law" within the meaning of 5 U.S.C. § 706(2)(D). Plaintiff was entitled to have his petition found to present substantial evidence indicating that the petitioned action may be warranted, and for such determination to be published in the Federal Register, to provide for public notice of such finding to assist defendants and plaintiff in gathering further evidence prior to a second determination on the ultimate merits of the petition.

> **Deleted:** Petitioner
>
> **Deleted:** petitioner

37.     In the alternative, defendants' ultimate determination on the plaintiff was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A) for the reasons alleged above.

> **Deleted:** petition

38.     Plaintiff has no adequate remedy at law, and will suffer continuing and irreparable injury unless and until defendants are compelled to make lawful decisions concerning his petition.

**SECOND CLAIM FOR RELIEF:  ADMINISTRATIVE PROCEDURE ACT**

39.     Plaintiff realleges paragraphs 1-42 as if set forth herein.

40.     To the extent that a future court may determine that defendants' response to the petition was not agency action "which is not discretionary with the Secretary"

within the meaning of 16 U.S.C. § 1540(g)(1)(C), such that subject matter jurisdiction lies under 16 U.S.C. § 1533(b)(3)(C)(ii) and the Administrative Procedure Act, plaintiff alleges that defendants' rejection of the petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A) for the reasons alleged above.

WHEREFORE, plaintiff prays for judgment declaring defendants' rejection of the petition to have been unlawful, and remanding the petition to defendants for further consideration in accordance with law, and for such other and further relief as the Court may deem just and proper.

**Formatted:** Line spacing: Exactly 24 pt