RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
JEAN E. WILLIAMS, Chief
LISA L. RUSSELL, Assistant Chief
ROBERT P. WILLIAMS, Trial Attorney (SBN 474730 (DC))
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0206
Facsimile: (202) 305-0275

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOMER T. MCCRARY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARLOS M. GUTIERREZ, in his official capacity as U.S. Secretary of Commerce, the NATIONAL MARINE FISHERIES SERVICE, and RUSS M. STRACH, in his official capacity as Assistant Regional Administrator of the Protected Resource Division of the Southwest Region of the National Marine Fisheries Service,<br><br>　　　　Defendants. | Case No. 08-cv-1592-RMW<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 21, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Ronald M. Whyte<br>Courtroom 6, 4th Floor |

　　　Pursuant to the September 8, 2008 Scheduling Order (Dckt. No. 32), Defendant Carlos Gutierrez, in his official capacity as U.S. Secretary of Commerce, the National Marine Fisheries Service ("NMFS"), and Russ M. Strach, Assistant Regional Administrator of the Protected Resources Division of the Southwest Region (collectively "Federal Defendants"), respectfully submit the following reply in support of Federal Defendants' cross-motion for summary judgment.

*McCrary v. Gutierrez et al.*, Case No. 08-cv-1592-RMW
FDs' Reply Supp. Comb. Opp/Cross-MSJ

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................. 1

II.  ARGUMENT ....................................................................... 2

    A.  **The Purpose of the ESA Is to Conserve Listed Species and Their Habitats** ................................................................ 2

    B.  **The Applicable Standard of Review in this Case is Highly Deferential** .... 4

    C.  **NMFS Applied the Correct Standard of Review to Plaintiff's Petition** .... 6

    D.  **NMFS' Petition Finding Was Rational and Is Entitled to Deference** ...... 7

        1.  Genetic Evidence Supports NMFS' Petition Finding. ................ 7

        2.  NMFS Rationally Concluded Plaintiff's Evidence Was Not Reliable ... 9

            a.  Purported Archeological Evidence ...................... 10

            b.  Purported Effects on Steelhead ........................ 10

            c.  Purported Early Scientific and Popular Accounts ........... 11

            d.  Physical Characteristics of the Santa Cruz Mountains ....... 12

            e.  Plaintiff Misconstrues NMFS' 1991 ESU Listing Policy ..... 13

III. CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

CASES                                                                                           PAGE

Alsea Valley Alliance v. Evans, 161 F. Supp. 2d 1154 (D. Or. 2001) ..................... 4

Baltimore Gas & Elec. Co. v. NRDC, 462 U.S. 87 (1983) ............................... 5

Home Bldrs. Ass'n v. USFWS, 529 F. Supp.2d 1110 (N.D. Cal. 2007) .................... 6

Lands Council v. McNair, 537 F.3d 981 (9th Cir. 2008) ........................ 2, 5, 11, 12

Marsh v. Oregon Natural Res. Council, 490 U.S. 360 (1989) .................. 5, 7, 8, 12, 13

Northwest Ecosystem Alliance v. USFWS, 475 F.3d 1136 (9th Cir. 2007) .............. 2, 7

Tennessee Valley Authority v. Hill, 437 U.S. 153 (1978) ............................... 3


STATUTES                                                                                        PAGE

16 U.S.C. § 1531(b) ............................................................ 4

16 U.S.C. § 1532(16) ........................................................... 3

16 U.S.C. § 1532(3) ............................................................ 4

16 U.S.C. § 1532(6) ............................................................ 3

16 U.S.C. § 1533(a)(1) ....................................................... 3, 15

16 U.S.C. § 1533(b)(1)(A) ..................................................... 12

16 U.S.C. § 1533(b)(3)(A) .............................................. 1, 2, 5, 6

5 U.S.C. § 706 ................................................................ 2


REGULATIONS                                                                                     PAGE

50 C.F.R. § 424.11(d) ....................................................... 8, 11

50 C.F.R. § 424.14 ............................................................ 15

## I.  INTRODUCTION

As set forth in Federal Defendants' opening brief, before the Court is a challenge to a finding of the National Marine Fisheries Service ("NMFS") pursuant to Section 4(b)(3)(A) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(b)(3)(A), that Plaintiff's petition to remove protection under the ESA for coho salmon south of San Francisco did not present "substantial scientific or commercial information indicating that the petitioned action may be warranted." *See* 71 Fed. Reg. 14683 (Mar. 23, 2006) (hereinafter the "petition finding"). NMFS' petition finding should be upheld. There is no dispute that coho are in great danger of becoming extinct in all of central California, from Punta Gorda in northern California to the San Lorenzo River in Santa Cruz, California, and that coho populations south of San Francisco face the highest risk of extinction. *See* 70 Fed. Reg. 37160 (June 28, 2005). There also can be no dispute that NMFS provided Plaintiff a full and complete opportunity to be heard on his petition during the more than two-year dialogue between Plaintiff and NMFS that followed the submission of Plaintiff's petition. After thoroughly considering Plaintiff's petition, NMFS concluded that it was not supported by credible scientific evidence. NMFS further concluded that, contrary to Plaintiff's petition, credible scientific evidence demonstrates that coho south of San Francisco are a native species within its historical range. Because NMFS considered the relevant factors and issued a decision that is rational and within the scope of its expertise in a technically complex area, its determination is entitled to a high level of deference.

It is clear that, as a "forestland and forest-products business owner in the Santa Cruz Mountains," Plaintiff would like to see coho south of San Francisco removed from protection under the ESA. AR 1358. It also is apparent that Plaintiff views the evidence cited in his petition differently than did NMFS. Through this litigation, Plaintiff invites the Court to conduct its own evaluation of the evidence and change NMFS' petition finding from a negative to a positive finding. *See, e.g.* Pl's Opp. at 1 (stating: "The issue for determination is whether the amount of information presented in the Petition 'would lead a reasonable person to believe that the measure proposed in the Petition may be warranted'"); *see also id*. at 30 (requesting that the Court issue a "finding, as a matter of law, that plaintiff has met the minimal threshold of

acceptance of his Petition." Plaintiff seriously misconstrues the Court's role in this case. Congress has charged the Secretary of Commerce, by and through his designee, NMFS, with making petition findings, which it has done. *See* 16 U.S.C. § 1533(b)(3)(A). The Court's role "is simply to ensure that [NMFS] 'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" *Northwest Ecosystem Alliance v. USFWS*, 475 F.3d 1136, 1140 (9th Cir. 2007) (citation omitted). The Court is not to weigh the available evidence, nor may the Court substitute its judgment, or Plaintiff's judgment, for that of NMFS. Plaintiff invites the Court to engage in precisely the sort of unlawful review that the Ninth Circuit recently counseled against in *The Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008), where the Ninth Circuit instructed that it is not the proper role of a reviewing court to act as a panel of scientists, instructing an agency how it should evaluate the available evidence. While Plaintiff clearly disagrees with NMFS' decision to reject his petition, what the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, require is that NMFS consider the relevant factors and issue a finding that is rational. NMFS has done that in this case, and as such its determination is entitled to deference.

As explained more fully below, Plaintiff's opposition brief mischaracterizes the fundamental purpose and requirements of the ESA, NMFS' Policy on Applying the Definition of Species Under the Endangered Species Act to Pacific Salmon, 56 Fed. Reg. 58612 (Nov. 20, 1991) ("1991 ESU Policy"), the administrative record, and the applicable standard of review.

**II.    ARGUMENT**

    **A.    The Purpose of the ESA Is to Conserve Listed Species and Their Habitats.**

Several fundamental misconceptions of the ESA permeate Plaintiff's opposition brief that warrant clarification. First among them is Plaintiff's contention that it is somehow antithetical to the purpose of the ESA to list distinct population segments ("DPS"). *See* Pl's Opp. at 3 (asserting that NMFS has "utterly inverted the Congressional design" of the ESA). Plaintiff's suggestion that the ESA calls for NMFS to exclude, rather than protect, coho south of San Francisco, subverts the fundamental purpose of the ESA. As the Supreme Court has noted, "[t]he dominant theme pervading all Congressional discussion of the proposed [Endangered

Species Act of 1973] was the overriding need *to devote whatever effort and resources were necessary* to avoid further diminution of national and worldwide wildlife resources." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 177 (1978) (citation omitted).  The Supreme Court further explained in *TVA v. Hill* that "[t]he legislative proceedings in 1973 are, in fact, replete with expressions of concern over the risk that might lie in the loss of *any* endangered species." *Id*. To that end, the ESA expressly states in the definition of 'species' that a "'species' includes any subspecies of fish or wildlife or plants, and *any distinct population segment of any species* of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C. § 1532(16) (emphasis added); *accord* 16 U.S.C. § 1532(6) (ESA stating that a species is deemed "endangered" when it is "in danger of extinction throughout all *or a significant portion* of its range") (emphasis added).

As such, Congress clearly has authorized NMFS to list all endangered or threatened DPSs where they occur.  *See* 16 U.S.C. § 1533(a)(1) (stating, in pertinent part, that "[t]he Secretary shall . . . determine whether any species is an endangered species or a threatened species").  As is relevant to this case, NMFS has determined that "species" of Pacific salmon for listing purposes under the ESA are represented by evolutionarily significant units ("ESUs").  *See* 56 Fed. Reg. 58612.  There is no dispute that coho salmon are in great danger of becoming extinct in central California, particularly those south of San Francisco.  The fact that coho salmon may be more abundant in other parts of the world is irrelevant.  NMFS' listing of the Central California ESU is entirely consistent with the purpose of the ESA.

The second misconception that permeates Plaintiff's opposition brief is Plaintiff's suggestion that coho south of San Francisco do not qualify for protection under the ESA because they are not "self-sustaining."  *See* Pl's Opp. at 1, 2, 4, 5, 11-13, 19.  As an initial matter, whether or not a population or group of populations is "self-sustaining" is not, in and of itself, a significant factor.  NMFS' Population Structure Memorandum specifically acknowledges that many populations that are not "self-sustaining" in isolation (so-called "dependent" populations), persist nonetheless due to migration/straying between them.  AR 1582.  Populations that are unlikely to persist due to a lack of immigration are denoted as "ephemeral."  AR 1583.  None of the coho populations south of San Francisco have been found to be ephemeral.

Furthermore, the fact that coho south of San Francisco are so depleted as to prompt the use of conservation hatcheries is one of the very reasons that they are deserving of protection under the ESA in the first instance. *See* FD's Mem. at 21 n.12. The stated purpose of the ESA is "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The ESA defines "conservation," in pertinent part, as:

> [T]he use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary. Such methods and procedures include, but are not limited to, all activities associated with scientific resources management such as research, census, law enforcement, habitat acquisition and maintenance, propagation, live trapping, and transplantation.

16 U.S.C. § 1532(3); *accord Alsea Valley Alliance v. Evans*, 161 F. Supp. 2d 1154, 1157 (D. Or. 2001) (noting that the ESA "recognizes that conservation of listed species may be facilitated by artificial means"). As the court noted in *Alsea Valley*, "'if a species is listed under the ESA, the Secretary must not merely avoid elimination of that species, but is required to bring the species back from the brink sufficiently to obviate the need for protected status.'" 161 F. Supp. 2d at 1157 (quoting *Fed'n of Fly Fishers v. Daley*, 131 F. Supp.2d 1158, 1163 (N.D. Cal. 2000)). In this case, coho were once abundant in central California, numbering from 50,000 to 125,000 native coho in the 1940s, however those numbers have collapsed, such that coho in central California are now in great danger of becoming extinct. 61 Fed. Reg. 56138. The use of conservation hatcheries to recover the coho is perfectly consistent with the ESA. 61 Fed. Reg. at 56145. Plaintiff's suggestion that these coho should be denied protection due to the existence of conservation hatcheries is antithetical to the ESA, and is based on the erroneous assumption that streams south of San Francisco are not part of the species' historical range, and thus that "alien" fish are being "introduced" outside of the historical range. As NMFS has explained, coho are native south of San Francisco. *See generally* 71 Fed. Reg. 14683. The Central California ESU is intended to protect the historical range of the species and facilitate recovery efforts**.**

**B.     The Applicable Standard of Review in this Case is Highly Deferential.**

It is well-established that government agencies are entitled to a highly deferential

standard of review in cases such as this one, where the agency has acted within the scope of its expertise in a technically complex area. *See Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375, 378 (1989); *Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 103 (1983); FD's Mem. at 11-12. Indeed, in *The Lands Council*, 537 F.3d 981, the Ninth Circuit, sitting *en banc*, recently reiterated that reviewing courts are to "reverse a decision as arbitrary and capricious *only if* the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. at 987 (citations omitted) (emphasis added).

Plaintiff's attempt to avoid this highly deferential standard of review is meritless. *See* Pl's Opp. at 5-6. NMFS' petition finding was, first and foremost, a scientific analysis of whether Plaintiff's purported evidence presented substantial information indicating that coho are not native south of San Francisco. It is clear from NMFS' petition finding that the agency carefully considered all of Plaintiff's evidence before reaching its conclusion. The petition finding provides a point-by-point discussion of each of Plaintiff's lines of evidence, rationally explaining why NMFS did not share the same view of its worth as did Plaintiff. Such difference of opinion is precisely the sort of case where the reviewing court is to defer to the agency's rational evaluation of the evidence. *See, e.g. Marsh*, 490 U.S. at 378 ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive"). Furthermore, there is simply no support for Plaintiff's contention that NMFS is somehow entitled to less deference for "threshold review of petitions under § 1533(b)(1)(A)" than for "*final* determinations of scientific issues." Pl's Opp. at 6. On its face, threshold petition findings require a determination of whether or not the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted," 16 U.S.C. § 1533(b)(3)(A), and to that end, a determination of whether the petition is "accompanied by appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps." 50 C.F.R. §

424.14(b)(2)(iv). Thus, preliminary petition findings are clearly scientific determinations that require NMFS to exercise its technical expertise. In sum, NMFS' petition finding is entitled to a highly deferential standard of review and must be upheld so long as the agency considered the relevant factors and articulated a rational explanation for its decision.

### C. NMFS Applied the Correct Standard of Review to Plaintiff's Petition.

Despite the express conclusion in NMFS' petition finding that Plaintiff's "Petition 'fails to present substantial scientific or commercial information indicating that the petitioned action may be warranted,'" Plaintiff continues to assert that NMFS applied "an erroneously high standard of proof upon the Petition" by insisting upon "definitive" proof. *Compare* 71 Fed. Reg. at 14687 *and* 16 U.S.C. § 1533(b)(3)(A) *with* Pl's Opp. at 6, 7. As NMFS has explained, the fact that NMFS' petition finding may have occasionally mentioned the fact that Plaintiff's cited evidence did not "definitively" prove that coho salmon are exotic south of San Francisco does not mean that NMFS applied the incorrect legal standard. *See Home Bldrs. Ass'n v. USFWS*, 529 F. Supp.2d 1110, 1122 (N.D. Cal. 2007) (finding that, "[j]ust because the final rule occasionally mentioned 'complete' or 'fully' in its analysis did not mean that FWS had applied a more stringent standard"). Read as a whole, NMFS' petition finding explained that Plaintiff's evidence was not credible and was refuted by reliable scientific evidence.

Furthermore, Plaintiff concedes that his Petition "made strong claims about the data." Pl's Opp. at 7. For instance, Plaintiff's petition asserts that "[t]he *conclusive* history concerning the non-native origin of the coho of the Santa Cruz Mountains is supported by the absence in the archeological excavations of coho remains in the refuse, hence the diet, of the native people," and further asserts that "[a]ll valid studies done prior to 1906 *unequivocally* attest to the absence of coho salmon south of San Francisco." AR 1360, 1362 (emphasis added). Rather than insisting on definitive proof, as Plaintiff argues, NMFS' petition finding merely expressed its disagreement with Plaintiff's conclusive assertions. FD's Mem. at 27.[1]

---

[1] Plaintiff's charge that this assertion is impermissible post-hoc rationalization is without merit. Pl's Opp. at 7. NMFS is not inventing a new substantive "rationale" for its decision to reject Plaintiff's petition, but rather provides legal argument in response to Plaintiff's challenge

In sum, NMFS applied the appropriate standard in concluding that Plaintiff's petition failed to present substantial scientific information indicating that the petitioned action may be warranted.

### D. NMFS' Petition Finding Was Rational and Is Entitled to Deference.

This case is about a difference of scientific opinion. Plaintiff cannot seriously dispute that NMFS considered all of his evidence. NMFS' petition finding provides a point-by-point discussion of each line of evidence cited in Plaintiff's petition. NMFS ultimately concluded that, not only was Plaintiff's evidence flawed to the point of not being reliable, it was refuted by the best available scientific information. For instance, NMFS explained that genetic testing provided no evidence that coho salmon are an "exotic" species south of San Francisco. In fact, NMFS explained that coho samples were collected in several streams south of San Francisco in 1895, 11 years prior to their alleged introduction in 1906. Plaintiff clearly holds a different opinion of his evidence than does NMFS, but the fact of the matter is that the Court may not substitute Plaintiff's judgment, or the Court's judgment, for that of the agency. Rather, as explained previously, under the APA's highly deferential standard of review, the Court must uphold NMFS' petition finding as long as the agency "'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" *Northwest Ecosystem Alliance*, 475 F.3d at 1140 (citation omitted); *accord Marsh*, 490 U.S. at 378 ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive"). In this case, NMFS' petition finding was rational, supported by the administrative record, and therefore entitled to deference.

#### 1. Genetic Evidence Supports NMFS' Petition Finding.

As NMFS explained in its opening brief, recent genetic evidence contradicts the suggestion in Plaintiff's petition that coho salmon in streams south of San Francisco Bay are

---

to the standard of review the agency employed in reaching its finding. It is unreasonable to expect NMFS to have predicted Plaintiff's legal argument and include a discussion thereof in the petition finding itself.

*McCrary v. Gutierrez et al.*, Case No. 08-cv-1592-RMW
FDs' Reply Supp. Comb. Opp/Cross-MSJ         -7-

1  descended from Baker Lake, Washington stocks planted in 1906.  *See* FD's Mem. at 15-19.
2  Specifically, NMFS' genetic studies have revealed that coho populations south of San Francisco
3  Bay are most closely related to populations just to the north of San Francisco Bay, which is
4  within the Central California ESU.  *See* FD's Mem. at 15.  Plaintiff now concedes that the coho
5  salmon currently inhabiting streams south of San Francisco are not descended from "exotic"
6  transplants from Baker Lake, and further admits that it is "no surprise" that there is evidence
7  genetically linking coho populations south of San Francisco to other populations in the Central
8  California ESU.  *See* Pl's Opp. at 24.  Thus, as explained more fully in § II.3.e, *infra*, there is no
9  credible evidence to support removal of coho south of San Francisco from the Central California
10 ESU.
11       Plaintiff's opposition brief argues at length in an attempt to prove two points regarding
12 the use of genetic data that are not in contention, namely that: (1) genetic data cannot directly
13 establish historical coho presence south of San Francisco; and (2) genetic data does not establish
14 a "bright line" test for delineating ESU boundaries.  *See* Pl's Opp. at 23-30.  With regard to the
15 first issue, NMFS explained in its opening brief that it has never contended that genetic samples
16 of present day coho populations can directly establish historical coho presence south of San
17 Francisco because there is nothing to which to compare the samples.  *See* FD' Mem. at 16.  This
18 fact, in and of itself, neither supports, nor refutes Plaintiff's petition.  What genetic analysis can
19 do, however, is provide information on reproductive isolation and genetic distinctness between
20 different populations within the Central California ESU, which, as NMFS has explained,
21 supports the inclusion of coho south of San Francisco in the Central California ESU.  *Id*.
22 NMFS' opening brief further explained that the agency's statements on the utility of genetic data
23 have been entirely consistent.  *See* FD's Mem. at 16-19.
24       With regard to the second issue, NMFS has never contended that genetic data provides a
25 "bright line" test for delineating ESU boundaries.  Indeed, the line on the phyleogeographic tree
26 included on page 27 of Plaintiff's opposition brief demarcating the Central California ESU and
27 the Southern Oregon/Northern California Coast ESU ("SONCC") was not inferred from the tree
28 or the genetic data used to construct it.  Rather, the line was added post-hoc to illustrate the

1  concordance between the genetic data and the ESU boundaries. The tree proves this point quite
2  clearly, showing in the upper left side that the genetics of the Scott, San Vicente, and Gazos
3  Creek coho populations place them squarely within the Central California ESU. *See* AR 1654.
4  Plaintiff's assertion (at 26) that Pairwise $F_{ST}$ values show that coho populations south of San
5  Francisco are "distinct" from the remainder of the Central California ESU is specious. What low
6  Pairwise $F_{ST}$ values show (AR 1656) is that coho populations in the streams south of San
7  Francisco are more closely related *to each other* than populations elsewhere in the Central
8  California ESU are related *to one another*. The Pairwise $F_{ST}$ values do not, as Plaintiff asserts,
9  show that coho populations south of San Francisco are genetically distinct from the remainder of
10 the Central California ESU, and thus do not provide support for excluding those populations
11 from the ESU. Furthermore, with respect to the assignment tests, also noted in Plaintiff's
12 opposition (at 28), the percent of individual coho misassigned between two populations is a
13 measure of how isolated (*i.e.*, genetically similar) they are. Thus, the increased number of fish
14 misassigned between streams in the south of San Francisco area and the intermingling of
15 population samples from different creeks in the south of San Francisco area both reinforce the
16 finding that these coho salmon populations are unique only in that they are exchanging migrants
17 and interbreeding at a higher rate than similar groups of streams in the northern part of the ESU.
18 They do not, as Plaintiff contends (Pl's Opp. at 28-29), show that coho south of San Francisco
19 are genetically dissimilar from the other Central California ESU coho populations.
20     In sum, genetic evidence refutes the notion that coho south of San Francisco are an
21 "exotic" species introduced from Washington State, a point that Plaintiff now concedes. *See* Pl's
22 Opp. at 12-13, 23-24. Furthermore, while genetic data does not directly establish historical coho
23 presence south of San Francisco, it confirms the appropriateness of their inclusion in the Central
24 California ESU and therefore provides support for NMFS' determination that Plaintiff's petition
25 failed to present substantial scientific information indicating that removing coho salmon south of
26 San Francisco from the ESU and denying them protection under the ESA may be warranted.
27         **2.     NMFS Rationally Concluded Plaintiff's Evidence Was Not Reliable.**
28     As NMFS explained in its opening brief (FD's Mem. at 26), one of the agency's tasks

when evaluating an ESA § 4 petition is to determine if it is "accompanied by appropriate supporting documentation." 50 C.F.R. § 424.14(b)(2)(iv). In this case, NMFS evaluated each of Plaintiff's proffered lines of evidence for scientific reliability and weight and provided a point-by-point response, rationally explaining why each was unreliable and failed to present substantial scientific information indicating that the petitioned action may be warranted.

### a. Purported Archeological Evidence.

As NMFS has explained, archaeological excavation findings do not provide credible evidence of either coho presence or absence south of San Francisco for several reasons. *See* FD's Mem. at 22-23. First, coho salmon rarely have been documented in archeological excavations within their undisputed range in California. Indeed, Plaintiff even concedes that salmonid bones do not preserve well. *See* Pl's Opp. at 8. Furthermore, the studies cited by Plaintiff are not reliable evidence of coho absence south of San Francisco because the studies had extremely limited sample sizes in the relevant areas. Far more extensive sampling would be needed before archaeological excavation findings could be used as credible evidence of the presence or absence of coho salmon. Indeed, Gobalet (2004) – the study cited by Plaintiff – expressly refutes the thesis of Plaintiff's petition, stating that "there is no question that coho salmon were native to San Mateo and Santa Cruz counties." AR 1545. In sum, NMFS carefully considered Plaintiff's proffered archeological evidence and rationally concluded that it did not present substantial scientific information indicating that coho are an exotic species south of San Francisco. Plaintiff may weigh the archeological data, or lack thereof, differently than NMFS, but the fact of the matter is that NMFS' rational interpretation is entitled to deference.

### b. Purported Effects on Steelhead.

Plaintiff argues that the Court should "mandat[e] acceptance of [his] Petition" because NMFS failed to consider the effects of "alien" coho on "native" steelhead in deciding whether or not to accept his petition. Pl's Opp. at 8-9. Plaintiff's contention is meritless. First, Plaintiff assumes that coho is an "alien" species. NMFS' petition finding was devoted entirely to this very issue. NMFS concluded that coho is a native species south of San Francisco, and as such Plaintiff's contention fails as a matter of simply logic. Second, there is no support under either

1  the ESA or its implementing regulations for Plaintiff's contention that NMFS should or even
2  could decline to list an endangered species to benefit another listed species. *See* 16 U.S.C. §
3  1533(a)(1)(A)-(E) (enumerating factors upon which NMFS must base its listing decisions); 50
4  C.F.R. § 424.11(d) (explaining that the Secretary is authorized to delist a species only if it is no
5  longer endangered or threatened due to the species' extinction, recovery, or an error in the
6  original data used for listing). Third, Plaintiff's assertion that NMFS failed to consider
7  purported effects of coho on steelhead provides no basis for mandating acceptance of his
8  petition. Plaintiff again misstates the Court's role in this case.

### c. Purported Early Scientific and Popular Accounts.

As NMFS' petition finding explained, newspaper articles and general ichthyofaunal references from the early 1900s are not reliable scientific evidence of precise species distribution. *See* 71 Fed. Reg. at 14686. For instance, a statement "that a species is abundant up to, or from, a geographical landmark does not mean that the species was absent in areas beyond the referenced landmark." *Id*. at 14684. Moreover, Plaintiff's assertions are contradicted by perhaps the most important ichthyological paper of that era, "The Fishes of the Streams Tributary to Monterey Bay, California," which notes that expeditions in Central California from 1897 and 1909 clearly describe coho (silver) salmon in the San Lorenzo River. AR 374. This work was published in 1912 by John Otterbein Snyder, a preeminent scientist who established and organized the U.S. National Museum of Natural History's ichthyological collections, served as a professor at Stanford University for over 40 years, and was a student and then close colleague of David Starr Jordan, the author of the studies cited by Plaintiff. Plaintiff argues that NMFS should have given his newspaper and magazine evidence more weight (Pl's Opp. at 9), however what the ESA and the APA require is that NMFS consider the evidence and provide a rational explanation of its analysis. NMFS has done that in this case. NMFS' rational explanation is entitled to deference. *The Lands Council*, 537 F.3d at 993 (Ninth Circuit noting that, under the APA's arbitrary and capricious standard of review, the law requires courts to "defer to an agency's determination in an area involving a 'high level of technical expertise'") (citation omitted)). Plaintiff further argues that NMFS should have afforded less weight to the

1895 coho specimens that NMFS noted establish coho presence south of San Francisco 11 years prior to their alleged introduction in 1906, however Plaintiff offers no actual evidence to disprove the authenticity of the specimens. *See* Pl's Opp. at 10. In fact, Plaintiff concedes that the specimens "'do look like juvenile coho.'" Pl's Mem. at 14. In the complete absence of any evidence that the specimens are not coho salmon, or are not the same fish collected in 1895, a fact that was confirmed by the California Academy of Science's Collections Manager, it was entirely rational for NMFS to consider the specimens in reaching its decision on Plaintiffs' petition. *See* 71 Fed. Reg. at 14685; FD's Mem. at 20 n.11. NMFS' rational explanation of this evidence is entitled to deference. Plaintiff merely asks the Court to second-guess NMFS' evaluation of the available evidence based on Plaintiff's unsupported speculation, something the Court may not do.

### d. Physical Characteristics of the Santa Cruz Mountains.

NMFS' petition finding explains that the agency's analysis of coastal streams south of San Francisco contradicts Plaintiff's assertion that environmental conditions south of San Francisco are so extreme as to have precluded coho's historical presence there. *See* 71 Fed. Reg. at 14686; FD's Mem. at 23. Plaintiff argues that NMFS' computer model should have included additional variables to account for events such as droughts, sandbars, and extreme precipitation. Pl's Opp. at 11-12. Plaintiff's contention is without merit. First, the ESA requires NMFS to utilize "the best scientific and commercial data available;" it does not require NMFS to gather additional data. 16 U.S.C. § 1533(b)(1)(A). NMFS therefore acted in accordance with the ESA by utilizing the best data available. Second, NMFS explained that, although "climatic conditions, erosive geology, and variable hydrology can be detrimental to coho salmon," such conditions are not unique to the area south of San Francisco and also occur in other portions of the geographic range of the Central California ESU where coho salmon are undisputedly native and persistent. NMFS' explanation is entirely rational and therefore entitled to deference. As the Ninth Circuit recently noted, it is not a reviewing court's role to assess the quality and detail of an agency's analysis and make "fine-grained judgments of its worth." *The Lands Council*, 537 F.3d at 993 (citation omitted). Rather, "an agency must have discretion to rely on the

reasonable opinions of its own qualified experts" when specialists express conflicting views. *See Marsh*, 490 U.S. at 378. In this case, NMFS rationally relied on its analysis of environmental conditions.

### e. Plaintiff Misconstrues NMFS' 1991 ESU Listing Policy.

Plaintiff's opposition brief continues to argue that coho south of San Francisco should be carved from the Central California ESU because those populations, in and of themselves, do not satisfy the criteria of NMFS' 1991 ESU Policy. *See* Pl's Opp. at 13-19. Specifically, Plaintiff contends that coho populations south of San Francisco do not represent an important component in the legacy of the species. *Id*. Plaintiff further argues repeatedly that removing ESA protection for coho south of San Francisco would satisfy Congressional intent that NMFS use its DPS listing authority "sparingly." *See* Pl's Opp. at 1, 3, 5, 9, 17, 19. As NMFS has explained, Plaintiff's arguments are wholly misguided. *See* FD's Mem. at 18-19, 24-26; 71 Fed. Reg. at 14687. The purpose of NMFS' 1991 ESU Policy, and the paper it is based upon – Waples (1991) is to define *an ESU*.[2] In this case, NMFS examined coho ranging from Punta Gorda in northern California to the San Lorenzo River in Santa Cruz, California and determined that they are genetically similar, behaviorally similar in their run-and spawn-timing, and share environmental conditions. *See* 60 Fed. Reg. at 38016. NMFS further determined that those populations, as a whole, were substantially reproductively isolated from coho north of Punta Gorda and that they, as a whole, represent an important component in the legacy of the species. To state it bluntly, they are all the same fish. NMFS therefore delineated the Central California ESU to include all of those populations, in compliance with its 1991 ESU Policy. *See* FD's Mem. at 6-9.[3] NMFS clearly articulated a rational basis for its delineation of the ESU's

---

[2] Under NMFS' 1991 ESU Policy, an ESU is a stock of salmon that is: (1) substantially reproductively isolated from other nonspecific population units; and (2) represents an important component in the legacy of the species. 56 Fed. Reg. 58612.

[3] Plaintiff erroneously asserts that NMFS has declared that "every population of coho salmon anywhere must be deemed to meet the statutory requirements for listing." Pl's Opp. at 3-4. NMFS has never made such a statement. In fact, in coho ESUs such as the Lower Columbia River and the Oregon Coast, NMFS has excluded hatchery populations from the ESU delineation and thus has not listed those populations under the ESA. 70 Fed. Reg. 37160.

boundaries, and as such that delineation is entitled to deference.

There is no support for Plaintiff's argument that the 1991 ESU Policy supports carving coho south of San Francisco out of the ESU. Pl's Opp. at 13-19. The 1991 ESU Policy is simply not intended to be applied to particular populations within an ESU.[4]/ As such, Plaintiff should not expect NMFS to have issued a finding of genetic "importance or significance" of any particular population within the ESU. *See* Pl's Opp. at 17. What is relevant is whether the Central California ESU, *as a whole*, is an important component in the legacy of the species, a determination that is not disputed in this case. As explained above, coho south of San Francisco are not reproductively isolated, nor genetically distinct from, coho in the remainder of the Central California ESU, nor do they display evolutionarily important differences. Furthermore, as NMFS' petition finding explains, coho salmon south of San Francisco are within the species' historical range as demonstrated by the existence of coho specimens collected 11 years prior to their alleged introduction there. *See* 71 Fed. Reg. at 14684-85. Coho have persisted in these streams since that time, and both naturally spawning and hatchery reared coho continue to inhabit these streams today. In addition, genetic data fails to show that coho inhabiting streams south of San Francisco are descended from out-of-state transplants, a point that Plaintiff now concedes. *See* Pl's Opp. at 12-13, 23-24 (Plaintiff conceding that "hatchery experiments of the last 100 years . . . *failed to establish any persistent populations of coho south of San Francisco*"). Thus, it is agreed that there is no direct evidence to support Plaintiff's central thesis that coho are an "alien" species introduced south of San Francisco.

For the reasons set forth above, NMFS acted reasonably in including coho south of San

---

[4]/   Plaintiff asserts that the 1991 ESU Policy "assumes that fish populations will be evaluated for ESU status on a population-by-population basis." Pl's Opp. at 16. That is incorrect. As NMFS has explained, "the first step in determining the appropriate hierarchical level for consideration as an ESU is to identify units within which levels of gene flow are high relative to the rate of exchange between neighboring units." 56 Fed. Reg. at 58617. As an anadromous species, the hierarchical structure for coho salmon can vary from major river systems that contain several large tributaries, each with numerous streams fed by smaller creeks, to other areas characterized by numerous smaller streams, each entering directly into a tidewater area. *Id*. Thus, genetic structuring of spawning aggregations into more or less discrete units is determined by geographical, environmental, or other factors. *Id*.

Francisco in the Central California ESU and in concluding that there is no credible evidence to the contrary. As such, NMFS acted reasonably in concluding that Plaintiff's petition failed to provide substantial information indicating that coho south of San Francisco should be removed from the Central California ESU and from protection under the ESA. Because the coho populations south of San Francisco are properly included within the Central California ESU, NMFS is required by law to include them in the ESA listing. *See* 16 U.S.C. § 1533(a)(1), (b)(3)(A); 50 C.F.R. § 424.14 (the ESA and its implementing regulations authorize the Secretary to list, delist, or reclassify a "species"). Plaintiff's suggestion (Pl's Opp. at 11, 19) that coho south of San Francisco should be delisted even if they are native there is contrary to the ESA.

In sum, Plaintiff has not established that NMFS relied on factors Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or issued a decision so implausible that it could not be ascribed to a difference in view or product of agency expertise. NMFS' petition finding therefore is entitled to a high degree of deference.

### III. CONCLUSION

For the reasons set forth above, the Court should enter judgment in favor of NMFS.

Dated: November 7, 2008

    Respectfully submitted,

    RONALD J. TENPAS
    Assistant Attorney General
    Environment & Natural Resources Division

    JEAN E. WILLIAMS, Chief

    /s/ Robert P. Williams
    ROBERT P. WILLIAMS, Trial Attorney (SBN 474730 (DC))
    U.S. Department of Justice
    Environment & Natural Resources Division
    Wildlife & Marine Resources Section
    Ben Franklin Station, P.O. Box 7369
    Washington, D.C. 20044-7369

    ***Attorneys for Federal Defendants***