**E-FILED on** 2/8/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOMER T. MCCRARY,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS M. GUTIERREZ, in his official capacity as U.S. Secretary of Commerce, the NATIONAL MARINE FISHERIES SERVICE, and RUSS M. STRACH, in his official capacity as Assistant Regional Administrator of the Protected Resource Division of the Southwest Region of the National Marine Fisheries Service.<br><br>Defendants. | No. C-08-01592 RMW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 39, 43]** |

Plaintiff Homer T. McCrary ("McCrary") moves for summary judgment that defendant National Marine Fisheries Service ("NMFS") acted arbitrarily and capriciously in rejecting his petition arguing that coho salmon south of San Francisco should not be designated as "endangered" under the Endangered Species Act ("ESA"). Plaintiff also complains that defendants ignored the statutory ninety-day deadline for making a threshold determination as to whether the petition "present[ed] substantial scientific and commercial information indicating that the petitioned action

JUDGMENT GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

1 *may* be warranted." 16 U.S.C. § 1553(b)(3)(A) (emphasis added). In response, defendants Carlos
2 Gutierrez, United States Secretary of Commerce, Russ M. Strach, Assistant Regional Administrator
3 of the Protected Resources Division of the Southwest Region, and the NMFS move for summary
4 judgment that the NMFS's decision to deny plaintiff's petition is entitled to deference under the
5 Administrative Procedures Act, and plaintiff has failed to show that the decision was arbitrary and
6 capricious. *See* 5 U.S.C. § 706(2). For the reasons stated below, the court grants plaintiff's motion
7 and denies defendants' motion.

## I. BACKGROUND

The Endangered Species Act, enacted in 1973, provides for the listing and conservation of endangered and threatened species of wildlife, fish, and plants. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). The statute does not define "distinct population segment" ("DPS"), but regulations require that species be determined in accordance with "standard taxonomic distinctions and the biological expertise of the Department and the scientific community concerning the relevant taxonomic group." 50 C.F.R. 414.11(a). The NMFS determined that any evolutionary significant unit ("ESU") of Pacific salmon constitutes a species under the ESA. *See* 56 Fed. Reg. 58612. The NMFS's 1991 policy defines an ESU as a salmon stock that is: (1) substantially reproductively isolated from other nonspecific population units; and (2) represents an important component in the legacy of the species. *Id.*

Coho salmon that occupy the coastal streams in Santa Cruz and San Mateo counties south of San Francisco have been classified under the Endangered Species Act as a "threatened" species since 1996 and an "endangered" one since 2005. 71 Fed. Reg. 14683. These salmon are part of the Central California Coast ("CCC") coho salmon ESU, which includes salmon populations from Punta Gorda, California down to the San Lorenzo River in Santa Cruz. 61 Fed. Reg. 56138.

Under the ESA, interested parties may petition the Secretary of Commerce to add or remove a species from the "endangered" or "threatened" lists. 16 U.S.C. 1533(b)(3)(A). Plaintiff Homer McCrary's petition seeks to exclude coho salmon south of San Francisco from the CCC ESU.

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

2

McCrary's petition argues that hatchery-introduced salmon populations should not be protected by the ESA because they are not an evolutionarily important component of the species. Pl.'s Mot. for Summ. J. at 8. The petition contends, generally, that coho salmon are not native and cannot survive long term south of San Francisco, and thus any existing population is hatchery introduced. Because the ESA is meant to protect "naturally spawned populations," not hatchery-supported ones, the petition requests that the CCC ESU be revised to exclude coho salmon south of San Francisco. See 50 C.F.R. § 224.101(a).

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is proper when the pleadings and discovery show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although there may have been factual issues before an administrative agency whose action the district court is asked to review, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. . . . [S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769-770 (9th Cir. 1985). In other words, summary judgment is appropriate in this case because "[w]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law." *American Bioscience v. Thompson*, 269 F.3d 1077, 1083 (D.C.Cir. 2001); *see Occidental*, 753 F.2d at 769.

### B. The Standard of Review

The ESA provides for a two-step process to review petitions seeking changes to the threatened and endangered species lists. Under the ESA, "[t]o the maximum extent practicable, within 90 days after receiving the petition of an interested person . . . , the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action *may* be warranted." 16 U.S.C. § 1533(b)(3)(A)(emphasis

added). "Substantial information" is "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. 424.14(b)(1). If the Secretary determines that the petition does present substantial information, the Secretary "shall promptly commence a review of the status of the species concerned." *Id.* Within twelve months after the initial finding, the Secretary must make one of the following findings: (1) that the action is not warranted; (2) that it is warranted and a proposed regulation should be published; or (3) that it is warranted but implementation is precluded by other pending proposals. 16 U.S.C. § 1533(b)(3)(B). In making this twelve-month determination, the NMFS must invite comment from all interested parties. *Ctr. for Biological Diversity v. Morgenweck*, 351 F.Supp.2d 1137, 1143 (D.Col. 2004) (citing 50 C.F.R. § 424.15(c)).

The standard that the agency must apply at each stage, and the materials it normally should consider, are different for the 90-day findings and those required at the twelve-month stage. At the 90-day stage, the statute directs the agency only to assess whether the scientific or commercial information presented in the petition is substantial. The twelve-month inquiry, on the other hand, involves a full assessment of the petitioned action's merits, with public comment and proposed rule-making. Although there is no explicit prohibition against consulting extra-petition information at the 90-day stage, the statute's language and procedural structure suggest that the petition itself should be the inquiry's primary focus. *See Morganweck*, 351 F.Supp.2d at 1143 ("Invitations to others to respond to the Petition should await the twelve-month status review."). Additionally, in order to merit a twelve-month status review, the evidence at the 90-day stage need only be substantial enough that a reasonable person would find that the requested addition or removal may be warranted.

> At the 90-day stage, the question is not whether the designation is warranted, only whether it *may* be. The standard requiring consideration of whether a "reasonable person" would conclude that action "may be warranted" contemplates that where there is disagreement among reasonable scientists, then the Service should make the "may be warranted" finding and then proceed to the more-searching next step in the ESA process.

*Ctr. for Biological Diversity v. Kempthorne,* 2007 WL 163244, at *7 (N.D.Cal. Jan. 19, 2007); *see Ctr. for Biological Diversity v. Kempthorne,* 2008 WL 659822, at *12 (D. Ariz. Mar. 6, 2008). This

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

4

more limited standard "seems to require that in cases of contradictory evidence, the Service must defer to information that supports [the] petition's position." *Kempthorne,* 2007 WL 163244, at *4. The statute thus suggests that the evidentiary assessment at the 90-day stage is a preliminary one. Nevertheless, as defendants point out, the initial 90-day assessment does require an evaluation of whether the evidence supporting the petition is substantial.

Generally, the court will set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). Review under the arbitrary and capricious standard is narrow, and the court will not substitute its judgment for that of the agency. *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). A decision is arbitrary and capricious if "the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (internal quotations and citations omitted). As defendants point out, particular deference is appropriate when reviewing an agency judgment on a matter within that agency's scientific expertise. As the Ninth Circuit wrote in *Lands Council*, "[w]e are to be most deferential when the agency is making predictions within its area of special expertise, at the frontiers of science." 537 F.3d at 993 (citing *Forest Guardians v. U.S. Forest Service*, 329 F.3d 1089, 1099 (9th Cir. 2003)).

The parties dispute whether the NMFS's decision at the 90-day stage is due heightened deference under *Lands Council*. Defendants argue that the "NMFS has expertise in fish biology and ecology, and as such its evaluations of the available scientific information is entitled to a high level of deference." Federal Defs.' Combined Opp'n. and Cross-Mot. Summ. J. at 14:15-17. Plaintiff responds that the determination of whether a reasonable person would find that the petitioned action may be warranted is "manifestly not the ultimate scientific and policy determination, and, indeed, is not the sort of determination as to which the defendants have any particular expertise." Pl.'s Combined Opp'n. and Reply at 6:12-14.

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

5

The regulatory scheme supports each side's position to a limited extent. There is nothing in the regulatory scheme that suggests that the agency should not use its expertise at the 90-day stage in determining whether the petition presents substantial scientific or commercial information.[1] However, its determination at the 90-day stage is only whether the information would lead a reasonable person to believe action *"may"* be warranted. If it determines that the petition is supported by substantial scientific or commercial information that may justify the action requested by the petitioner, the agency should not reject the petition at the 90-day stage. Rather, it should proceed with a full investigation of the merits of the requested action, including considering public comment and scientific or commercial information outside what is supplied with the petition. The agency's expertise is particularly important at the 12-month stage when the agency makes findings as to whether the action requested by the petition is warranted.

**C.     The NMFS's Decision to Reject the Petition**

In this case, the plaintiff filed his petition on November 6, 2003 seeking a reconsideration of the ESA listing of coho salmon in California, arguing that the geographic scope of the listing should not include populations south of San Francisco. The petition led to a lengthy dialogue between plaintiff and the NMFS. On July 16, 2004, the NMFS's Southwest Fisheries Science Center provided an evaluation of plaintiff's petition and supporting materials and concluded that the petitioner's request was not supported. Petitioner responded by submitting supplemental information on October 18 and 25, 2004. The NMFS responded on March 17, 2005 and provided a second evaluation that again concluded that the petition was not supported by historic or scientific evidence. Once again, plaintiff responded by sending a written response on May 10, 2005 and additional submissions on October 11, 2005 and December 5, 2005. Staff from the NMFS's Southwest Regional Center met with plaintiff and his representative on November 30, 2005. On March 23,

---

[1] In support of their contention that the preliminary assessment requires exercise of agency expertise, defendants point to the regulation requiring that a petition be accompanied by "appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps." 50 C.F.R. 424.14(b)(2)(iv). This regulation does reflect that some expertise may be necessary, but the 90-day determination is only preliminary and only assesses whether a reasonable person may find the requested action warranted.

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

6

2006, the NMFS published its findings under 16 U.S.C. § 1533(b)(3)(A), rejecting the petition. This protracted exchange does not appear to be what the regulatory scheme contemplates will occur before an initial 90-day determination. However, it appears that plaintiff was at least in part responsible for the protracted period because he supplemented his petition several times. Nevertheless, the fact that a more lengthy and rigorous evaluation was undertaken than the statute envisions does not change the standard to be applied. Thus, the question to be answered by this court is whether the NMFS had a rational basis for concluding that a reasonable person would not find the scientific or commercial information supplied with plaintiff's petition sufficient to show that coho salmon south of San Francisco should not be designated as an endangered specie. In other words, were the NMFS's findings under § 1533(b)(3)(A) arbitrary and capricious?

Plaintiff marshaled three types of evidence supporting his proposal to modify the geographic scope of the CCC ESU. First, he contended that historical sources demonstrate that the central California coho habitat does not extend south of San Francisco. Administrative Record ("AR") 1362. This historical evidence comes in a variety of forms. Plaintiff quotes from works by prominent ichthyologist David Starr Jordan in the late nineteenth and early twentieth century, stating that coho salmon are rare or nonexistent south of San Francisco. AR 1362-63. Plaintiff also points to newspaper and administrative records suggesting that: (1) coho salmon did not exist south of San Francisco; and (2) local hatcheries sought to introduce coho to the Santa Cruz area. AR 1363-64. In addition, the petition states that the first "credible scientific mention" of coho salmon south of San Francisco appeared in a 1912 bulletin of the U.S. Bureau of Fisheries. Plaintiff contends that this appearance is the result of hatchery-introduced coho salmon. AR 1365.

Second, the petition points to the lack of coho remains in Native American middens (i.e. refuse areas) in Santa Cruz and San Mateo counties. Third, the petition summarizes the inhospitable environment that the streams south of San Francisco present to coho salmon: short, steep streams with widely variable water flows, frequent droughts, and easily eroded terrain.

Defendants respond that the NMFS reasonably found this evidence unpersuasive. Defendants contend that genetic data contradicts the hypothesis that turn-of-the-century

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

7

introductions of out-of-state hatchery salmon are responsible for the coho population south of San Francisco. Defendants point to samples of juvenile coho salmon retrieved in 1985 from streams in San Mateo and Santa Cruz counties. Defendants contend that the number of fish introduced by hatcheries could not have produced the population that exists today. Fed. Defs'. Combined Opp'n. and Cross-Mot. Summ. J. at 21. Defendants also criticize the newspaper and magazine excerpts as not representing scientific evidence that coho salmon are exotic south of San Francisco. Defendants argue that the lack of coho remains in the Native American middens is not evidence of their absence and contend that the climate south of San Francisco does, in fact, allow persistent salmon populations. To these objections, plaintiff has his rejoinders. *See* Pl.'s Combined Opp'n. and Reply in support of Pl.'s Mot. Summ. J. at 6-24.

The NMFS cites the recent district court decision in *Palouse Prairie Foundation v. Salazar*, 2009 WL 415596 (E.D. Wash. Feb. 12, 2009), as supporting its position. In *Palouse Prairie*, the plaintiffs challenged the U.S. Fish & Wildlife Service's ("FWS") 90-day finding rejecting their petition to list the giant Palouse earthworm under the ESA. The plaintiffs in *Palouse* relied heavily upon circumstantial evidence, much like plaintiff does here. 2009 WL 415596 at *2. The plaintiffs in *Palouse* argued that:

> FWS acted arbitrarily and capriciously by discounting their interpretation of the data. They submit that the FWS was required to accept their interpretation unless no reasonable person would accept it. The plaintiffs acknowledge that their interpretation may not be the only reasonable interpretation or even the most persuasive one. That does not matter at the initial stage in the proceedings, say the plaintiffs. All that matters is that their interpretation is a reasonable one. Consequently, as the plaintiffs see it, the FWS's negative 90-day finding must be reversed unless the FWS demonstrates to the Court's satisfaction that no reasonable person would accept their interpretation of the data.

*Id.* The court rejected the plaintiffs' position as according "insufficient deference to the FWS's scientific judgment." *Id.*

Plaintiff seeks to distinguish *Palouse* on the basis that the plaintiff's evidence in that case was feeble and, unlike in the instant case, there was no evidence that the FWS applied the wrong standard. Although the court agrees that the evidence in *Palouse* was weaker than that offered by plaintiff here, this does not mean that plaintiff's evidence necessarily supports a conclusion that

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

8

removal of the designation of coho salmon south of San Francisco as an endangered species "may be warranted." 16 U.S.C. § 1533(b)(3)(A). However, it does appear that the NMFS, although purporting to utilize the correct procedure and review standard, simply bypassed the initial 90-day review and proceeded to do what was, in essence, a twelve-month status review without the required notice and the opportunity for public comment. *See Morgenweck*, 351 F.Supp.2d at 1143; *Western Watersheds Project v. Hall*, 2007 WL 2790404 (D. Idaho Sept. 24, 2007).

"[T]he [reasonable person] standard . . . contemplates that where there is disagreement among reasonable scientists, then the FWS should make the 'may be warranted' finding and then proceed to the more-searching next step in the ESA process." *Kempthorne*, 2007 WL 163244 at *7; *see Kempthorne*, 2008 WL 659822, at *12. "The only question before the FWS when it conducts a 90-day review is whether the petitioned action *may be* warranted, not whether it *is* warranted. As such, the application of an evidentiary standard requiring conclusive data in the context of a 90-day review is arbitrary and capricious." *Kempthorne*, 2007 WL 163244 at *7 (emphasis added).

Courts faced with the issue of what evidence should be considered during the 90-day review have held that the agency may only consider information within the four corners of the petition. *See Morgenweck*, 351 F.Supp.2d at 1143 ("FWS's consideration of outside information and opinions provided by state and federal agencies during the 90-day review was over inclusive of the type of information the ESA contemplates to be reviewed at this stage."); *Western Watersheds Project*, 2007 WL 2790404 at *6 ("It was improper for the Service to make an outside solicitation or inquiry about the Petition and consider the responses when making its 90-Day Finding); *Western Watersheds Project v. Norton*, 2007 WL 2827375, at *7 (D. Idaho Sept. 26, 2007) ("[C]onsidering information outside of the four corners of the petitions impermissibly expanded the scope of the 90-day review"); *Kempthrone*, 2007 WL 16322 at *4 ("The 'may be warranted' standard, however, seems to require that in cases of such contradictory evidence, the Service must defer to information that supports petition's position. It would be wrong to discount the information submitted in a petition solely because other data might contradict it.").

Defendants, in their effort to refute the showing made by plaintiff, offer evidence that appears to go beyond the four corners of the petition, some of which appears to have been gathered from third parties. In their findings rejecting the petition (which was made almost two-and-one-half years after the petition was filed), the NMFS cites evaluations by its Southwest Fisheries Science Center in October 2004 and March 2005. These evaluations appear to consider information gathered from third parties, such as the Collection Manager of the California Academy of Sciences Ichthyological Collection, as well as studies not included in the petition, such as records of out-of-state salmon plantings. 2006 WL 721667 (F.R.) at *4, 5, 7.

Although defendants purport to find that substantial evidence does not support the petition, there are indications that defendants actually considered the threshold requirements met. First, it seems unlikely that defendants would undertake two evaluations and meet with plaintiff during the nearly two and a half year period the petition was pending if the petition did not present sufficient evidence to meet the 90-day threshold requirement. Second, in August of 2004 the Regional Administrator of the NMFS acknowledged receipt of the petition and stated:

> [T]his office did receive your petition in November 2003. Due to heavy workload . . . we neglected to acknowledge receipt of the petition in writing and also failed to prepare and publish a Federal Register Notice indicating that we had accepted your petition. Subsequent to receipt and initial review of the petition, however, Regional office staff did determine the petition should be accepted and that it warranted further technical review.

AR 1450. Although the NMFS dismisses this letter as not being a finding, the letter nevertheless offers some insight regarding how the NMFS actually viewed the sufficiency of plaintiff's petition. Third, the last sentence of defendant's findings made on March 17, 2005 reads: "In any case, even if the information presented by the petitioner were to have been considered to warrant further review, a review of the additional scientific and commercial information regarding the description of the CCC coho salmon ESU indicates that the petitioned action is not warranted." 2006 WL 721667 (F.R.) at *8. Although the NMFS purports to have determined that review beyond the 90-day stage was not warranted, this sentence does suggest that defendants did not appreciate the difference between the scope of evidence to be reviewed at the two stages and that a twelve-month review required notice and time for interested parties to comment.

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

10

The court should not substitute its judgment for that of the NMFS on subject matter within the particular expertise of the NMFS. However, here, the court need not make a determination on the merits regarding whether the geographic scope of the listing of coho salmon as an endangered species is appropriate. The court only needs to determine whether the NMFS's denial of plaintiff's petition was arbitrary and capricious. An agency rule is generally considered arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here, the NMFS appears to rely upon evidence beyond the four corners of the petition. In addition, the NMFS appears to have used the standard to be applied for a twelve-month status review rather than the proper standard at the 90-day threshold determination. The court concludes that defendants did not follow the statutory scheme for the 90-day review of plaintiff's petition and that the rejection of plaintiff's petition was arbitrary and capricious.

The Supreme Court has made clear that where an agency has improperly relied on outside factors, "the reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* Therefore, the court need not determine whether there could be a rational basis for denying plaintiff's petition using the correct 90-day standard and considering only information in the four corners of the petition.

### III. ORDER

For the reasons stated above, the court GRANTS plaintiff's motion for summary judgment, DENIES defendants' cross-motion for summary judgment, VACATES the 90-day finding, and REMANDS to the NMFS the petition for proceedings in accordance with 16 U.S.C. § 1533(b)(3)(A). The NMFS shall make a 90-day finding based solely on information in the four corners of the petition and applying the proper 90-day standard.

DATED: 2/8/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

James L. Buchal    counsel@buchal.com
Andrea Mocsny Miller    amiller@NMLawFirm.com

**Counsel for Defendants:**

Robert Pendleton Williams    robert.p.williams@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 2/8/10            CCL
**Chambers of Judge Whyte**

JUDGMENT GRANTING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. C-08-01592 RMW

12